# 𝕎𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

LORENTZ *et al.* v LORENTZ, EX'R, *et al.*

Decided April 19, 1879.

1. A parol agreement between father and son, that on condition the son will enter upon a certain tract of land and improve it, the father will make him a deed for the same, and in pursuance and on faith of such agreement the son enters upon the land and occupies and improves it, is sustained by a sufficient consideration, and should be specifically performed.

2. Such contracts, before they can be enforced in a court of equity, must be established by competent and satisfactory proof, which must be clear, definite and certain.

Appeal from a decree of the circuit court of Braxton county, rendered on the 24th day of August, 1876, in a cause in chancery in said court then pending, wherein Perry C. Lorentz and others were plaintiffs, and Mifflin Lorentz executor of Jacob Lorentz, deceased, and others were defendants, allowed on the petition of said Perry Lorentz, and others, plaintiffs below.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

At January rules, 1873, in office of the clerk of the circuit court of Upshur county, Perry Lorentz, Catharine Lorentz his wife, and Margaret Lorentz and George P. Lorentz, their children, filed their bill against Mifflin

1879
Special Term.

Lorentz et al.
v.
Loreutz ex'r
et al.

Lorentz, executor of the last will and testament of Jacob Lorentz, deceased, and others, heirs-at-law of said Jacob, in which bill it is alleged that Perry Lorentz is the son of said Jacob, deceased, and that said Perry was formerly possessed of a valuable real and personal estate, but becoming involved in debt, his entire estate was sold away from him at the suit of his creditors. His father was a man of wealth owning valuable lands. When said Perry in his distress was forced to give up his home, the said Jacob, to secure a home to the wife and children of said Perry, caused a portion of one of his tracts of land to be surveyed and platted for the purpose of providing a home for the wife and children of said Perry. The said Jacob promised the said Catharine that he would convey to her for life, with remainder to her children by said Perry, a sufficient quantity of land to furnish them a home and comfortable support; and in execution of this agreement he caused the said plat to be made on the 28th day of March, 1859. The said land so surveyed consists of a tract of two hundred and fifty-four acres on Stone Coal creek in Lewis county. The said plat is filed with the bill.

After the plat was made it was shown to said Jacob Lorentz, who approved the same and agreed if the said Perry and his wife and children would move upon the said land, and occupy and improve it so as to provide a living for the family, that he would convey the same to said Catharine for life, remainder to her children. Perry agreed to do so, and there being no buildings of any kind on said tract, he proposed to build a log house thereon; but his father insisted that he should build a comfortable frame house, and that he would help him in the building of it, if he, Perry, should find himself unable to complete it. On the faith of said promise and undertaking of said Jacob said Perry, in behalf of his wife and children and for them, immediately after such survey, in 1859, took possession of said two hundred and fifty-four acres, and commenced to improve it. He planted many fruit trees, commenced

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

and continued the erection of a dwelling-house, improved and cultivated the land, and did much other necessary work thereon ; and in the spring of 1861 moved his family into the house he had erected thereon ; and they have occupied the same ever since, with the knowledge of the said Jacob, who resided only about three miles distant.

Said Jacob repeatedly expressed the desire that they should go on and make further improvements, and assured them that he would make a conveyance of said land to said Catharine and her children. And they did go on and make further valuable improvements on said land.

Plaintiffs charge that Jacob Lorentz in fulfillment of his said agreement did in his lifetime draw up, sign and seal and acknowledge before Simon Rohrbaugh, a justice of Upshur county, a conveyance to said Catharine for her life, with remainder in fee to her children, for said land, and that in the infirmity preceding his death he directed such conveyance to be delivered to said Catharine ; but by some strange and mysterious action of some person unknown to the plaintiff, the said conveyance has been withheld from her. The plaintiffs charge that the acts, directions, and declarations of said Jacob in his last sickness, just preceding his death, amount in law to a delivery of said conveyance ; and that at least the said conveyance constitutes such a written memorandum, as would entitle said Catharine and her children to a conveyance from the heirs of said Jacob.

The said Jacob Lorentz died in the year ——, and left all his property in the hands of his son Mifflin Lorentz. After his death the plaintiffs, Perry and Catharine, supposed that the promise and agreement of the said Jacob was known only to themselves, and remained for a long time in ignorance of evidence going to establish the same, which they have since ascertained.

While they were so ignorant of the existence of such evidence, Mifflin Lorentz, a son of said Jacob and executor of his will, claiming that no conveyance to said

Catharine and her children for said lands could be found among the papers of said Jacob, insisted that said Catharine must purchase said land from him as executor, or he would sell the same under authority of the will; and the said Perry of his own accord, ignorant of the existence of evidence to establish the rights of his wife and children, acting independently of his wife, on the 10th day of September, 1867, accepted from said Mifflin Lorentz a written memorandum reciting a sale of said land by said Mifflin to said Catharine. The said Catharine, in maintenance of her own right and the rights of her children who are infants, relies on the fact that she and her infant children are full-handed with evidence to establish and support their right, independently of such unauthorized act of purchase by her husband.

Said Jacob Lorentz died leaving a will which was duly admitted to probate, which will appoints Mifflin Lorentz executor, who has qualified as such. A copy of the will is made part of the bill.

Plaintiffs say that the will directs that the lands, of which said Jacob died seized, should be sold by his executor, and the proceeds divided among his children.

The prayer of the bill is for a specific performance of the contract set up in the bill.

The defendant, Mifflin Lorentz, as executor of the will of his father and also as his heir-at-law, answered the bill on the 31st day of March, 1874.

The answer denies that Jacob Lorentz made the agreement set up in the bill; denies that Jacob Lorentz had the said two hundred and fifty-four acres surveyed and platted, but avers that it was made at the instance of Perry Lorentz; denies that said plat was ever submitted to Jacob Lorentz, and denies that said Jacob ever did agree to convey said two hundred and fifty-four acres to Catharine Lorentz and her children; denies that said Jacob ever drew up or signed or acknowledged before Simon Rohrbaugh, or any one else, a conveyance of said land to said Catharine and her children.

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

Respondent says he was continually with his father in his last sickness for about five months before his death, and that he never heard him mention such a conveyance; and that since his death no such conveyance has been found among his papers; but that he has found among his father's papers a paper in the handwriting of his father, but not signed by him, dated June 30, 1862, conveying to Jacob Lorentz, Jr., trustee, the two hundred and fifty-four acres of land in the bill mentioned, together with two other tracts, to be held in trust for the term of ten years for the use and benefit of said Catharine and her children. Said paper is exhibited with the answer.

Respondent further states on the ―― day of June, 1862, said Jacob Lorentz did execute a deed of trust of the same character to Jacob Lorentz, Jr., trustee, for said two hundred and fifty-four acres of land together with two other tracts, to be held for the term of ten years for the use and benefit of said Catharine and her children, which deed of trust was accepted by said Perry Lorentz and his wife, who had the same placed upon record in Lewis county. A copy of this deed is exhibited with the answer. Respondent says "no doubt this was the deed and the only deed that was ever promised or made for the said two hundred and fifty-four acres of land by said Jacob Lorentz to said Catharine Lorentz and her children; for he was always prompt, kind and just in all his dealings with his children."

Respondent denies that he insisted that said Catharine should purchase said two hundred and fifty-four acres of land from him as executor, but avers that at the instance of said Perry Lorentz he did conditionally sell said land, together with some other land to said Catharine; but that said sale was not consummated, for the reason that she was not able to pay for it, and for no other reason whatever.

Respondent further states that in 1864, said Jacob

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

Lorentz made a list in his own handwriting of his un-sold lands, embracing the said two hundred and fifty-four acres; and again in 1865 he made another list of his un-sold lands, in which said two hundred and fifty-four acres were included, which two lists are filed with the answer as exhibits; that by the last will of said Jacob Lorentz it will be found that he had advanced to Perry the sum of $8,482.56 in real and personal property, as is shown on his ledger; that said Jacob Lorentz was very exact in charging his children with all advancements made to them, and that said two hundred and fifty-four acres are not charged to said Perry or his wife and children.

The deed referred to in the answer as Exhibit B, and which was acknowledged before D. D. Casto, J. P., on the 10th day of July, 1862, and recorded in Lewis county on the 17th day of July, 1862, provides, "that for and in consideration of one dollar, as well as for the natural love and affection that the said Jacob Lorentz bears towards the said Catharine Lorentz and her children by the said Perry doth devise unto said Jacob Lorentz, Jr., trustee for the said Catharine Lorentz and her children aforesaid, for their sole and separate use and enjoyment, free from any claim, use and enjoyment of him, the said Perry Lorentz, her husband, all the three tracts of land lying on Stone Coal creek, in the said county of Lewis, to-wit: the first tract containing two hundred and fifty-four acres, and two other tracts, one containing seventy-nine and three-fourths acres, and the other, seventy-four and three-fourths acres, for the term of ten years from the date of this deed, upon the special trust, that the said Jacob Lorentz, Jr., shall hold the above conveyed tracts of land for the uses and purposes following, for the term aforesaid, and for no other purpose whatso-ever—that is to say, that the said tracts of land, and the profits of the same are to be for the exclusive use and benefit of the said Catharine Lorentz and her children that she now has, or may hereafter have by her said

husband, Perry Lorentz, free from the control of the said Perry Lorentz, her said husband, and not to be liable for his debts now existing, or hereafter to be contracted." It further provided that if said Catharine should die before the expiration of the term, then the children were to have and enjoy the said land until the end of the term.

1879
Special Term.

Lorentz *et al.*
v.
Lorentz *ex'r.*
*et al.*

On the 12th day of February, 1875, the cause was removed to the circuit court of Braxton county, the judge of the circuit court of Upshur county being so situated as to render it in his judgment improper to try the cause.

The depositions of plaintiffs, in substance were as follows: A. J. Kidd had a conversation with Jacob Lorentz in 1863, in which he said: "the land, on which Perry Lorentz then lived, he intended to deed to Perry's wife and children; that the lease, which he had given Perry on said land, was merely to save his crops from his creditors." After the war he had another conversation with him in which he told witness, that "he had made the deed for said land to Perry's wife and children." During the winter before the death of Jacob Lorentz, witness had another conversation with him in the presence of his son-in-law, Simon Rohrbaugh, in which the old gentleman again said: "he had made said deed for said land to Perry's wife and children and that it was signed;" and thereupon Simon Rohrbaugh, in the presence and hearing of said Jacob Lorentz, called on witness to "bear in mind that the old man, Squire Lorentz, had stated that said deed for said land had been made and signed to Perry's wife and children."

John Ree had a conversation with Jacob Lorentz, in which he said: " he intended said land for Perry's wife and children, and that he intended to make them a deed for it " and asked witness if he thought he would be right in so doing; " that he thought they ought to have a home, and it was the intention that they should have one." "Said Jacob Lorentz also stated that a tract of seventy-four

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

àcres not in controversy in this suit, and the said tract on which Perry then resided, being the land in controversy, together would make them a good. home. " The conversation occured after the lease was made.

J. S. Hinzman said that Jacob Lorentz sent him word to let Perry Lorentz have lumber for building a dwelling house on the land, and he would see it paid for. Afterwards witness went to see him to get the pay for the lumber, he said he could not pay witness, that he had made Perry's wife and children a deed for said land, and that they would have to see that the lumber was paid for. This conversation took place in the winter of 1863.

James W. Miller:— Perry built a dwelling house on the land worth not less than $300.00 it might have cost more, also a double corn crib, worth about $20.00, also a milk house and cook house ; planted out fruit and ornamental trees, and made a nice. improvement around the house, repaired the old fences, and made some new fence. He also planted out many other fruit trees and built a stable.

Bailey Stalnaker had frequent conversations with Jacob Lorentz about how he had provided for his children. In one, about the last of the war, he told witness ; " that they had pretty much run Perry through with all he had, and many persons thought strange that he did not make Perry a deed for said land, and remarked if he did so Perry's creditors would take it for his debts and that he, Jacob, had made a deed therefor to Perry's wife and children.

Jacob Lorentz, a son of Jacob Lorentz deceased, was told to look at the plat filed with the bill, and having inspected it said, that it represented the land in controversy ; that it was made by the direction of his father, it was made for the purpose of having a deed made by his father to said Catherine Lorentz and her children for the land it describes, and was made by Nelson Warren about the time it bears date, March 28, 1859. At the time said plat was made witness was present, his father

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r,
et al.

asked him to examine the plat, and see if it reported the land he intended to give to Catherine Lorentz and her children, witness asked if he intended to give them the whole tract, he said no, that he thought he could not give them the whole tract, which contained three hundred and thirty-four acres, but that he intended to give them two hundred and fifty-four acres out of that tract; witness examined the plat and told his father that it contained two hundred and fifty-four acres; his father then said it was right. Some time in 1865 he had another conversation with his father in regard to that land, when he told him that "he had fixed it up for Perry's wife and children, and it belonged to them." Simon Rohrbaugh told witness there was a deed made by Jacob Lorentz to Catharine Lorentz and her children for said land. Witness asked Rohrbaugh if he was certain there was a deed made to them for that land; he stated, "I know there was a deed made." He said that the deed was acknowledged before him. The conversation occurred after the death of Jacob Lorentz. Witness stated that Simon Rohrbaugh had been dead for some years.

Perry Lorentz and wife knew at the time that the land was run out it was for Perry's wife and children. The plaintiffs have been in possession of the land from about the time of the survey, and were placed in possession by the said Jacob Lorentz with the understanding and agreement that the said land was the land of said Catharine and her children, and was to be conveyed to them by said Jacob Lorentz. Valuable improvements were made on the land by said Perry, and were all made in the lifetime of Jacob Lorentz, and with his knowledge. The deed of trust to witness, as trustee, was given by the father of witness for the benefit of said Catharine and her children, for the purpose of securing them a a home and living. Jacob Lorentz told witness that the said trust was to protect the property named in it from the creditors of said Perry Lorentz. Isaac Harman called on said Jacob Lorentz to purchase said land, and

97

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

he refused to sell it to him, on the ground that "he had given it to said Catharine and her children."

Nathan Allman knew of two persons in 1864 applying to said Jacob Lorentz to purchase said land ; he refused to sell it, and said to witness " he intended the land for Perry C. Lorentz for a home, if he could save it when his debt was paid: a debt he owed Boggs. He afterwards paid off the Boggs debt."

W. Bargerhuff, whose deposition was taken in September, 1874, said that ten to twelve years before that Jacob Lorentz had employed witness and his brother to put up a frame house on said land, and "finish it suitable for Perry C. Lorentz to move into," and after that Jacob. Lorentz said "Perry C. Lorentz might finish it himself, for it was enough for him, Jacob Lorentz, to give him, Perry C. Lorentz, said land."

Two depositions were taken on behalf of the defendants.

Mifflin Lorentz said he was the executor of the last will of Jacob Lorentz, deceased; that he had never found among the papers of Jacob Lorentz, deceased, a deed for the said two hundred and fifty-four acres of land to said Catharine and her children ; that he never knew of any such deed being in existence, and did not believe any such deed ever existed ; that his father was very particular in charging advancements made to his children, and had he executed such a deed, conveying a valuable tract of land, he would have made an entry or charge in his ledger of the value thereof against the plaintiffs. The paper Exhibit "A" is in the handwriting of his father, and was found by him among his father's papers. The plaintiffs took possession of said land, and held possession of it under the trust-deed, Exhibit "B," for ten years. Witness found the two papers marked Exhibit "C" and "D" filed with his answer, among his, father's papers. They are in the handwriting of his father. The two hundred and fifty-four acres are listed on both of said papers as unsold land. The first of the papers is

dated July, 1864, and the other was made out in June, 1865. Witness states that about the year 1867 Perry Lorentz, who said that his term under the deed of lease to his wife would soon expire, and that it was necessary for him to be looking out for a home, said if he witness, could sell the seventy-four acres embraced in the deed of lease to certain parties in the neighborhood at a fair price, he would induce his wife to release her claim under the lease to said seventy-four acres, for the remainder of the term, provided witness would sell to his, Perry's, wife the three hundred and thirty-four acres, at $11.00 per acre, which was about four dollars per acre less than witness considered the land was worth. In order to give him a home, and get possession of the seventy-four acres, which witness could sell at that time, he drew up an instrument of writing at the instance of Perry Lorentz, selling the three hundred and thirty-four acres of land to Perry's wife, to be delivered to her on condition that she would sign a release of her claim to the seventy-four acres under the deed of lease. This she declined to do, on the ground, as stated by her, that they were unable to pay for the three hundred and thirty four acres, unless witness would give them the interest on the proceeds of the sale of the seventy-four acres for the remainder of her term ; which witness declined to do, and that ended the matter. The two hundred and fifty-four acres are embraced in the said three hundred and thirty-four acres. During the time of said negotiation, neither Perry nor his wife said anything about having any further right to said two hundred and fifty-four acres of land.

On cross-examination witness said he was in the Confederate army and was absent from home from May, 1861, until June, 1865. He was asked how he then knew that plaintiff sold the land in controversy under the deed of trust, he answered: "Because the plaintiff, Perry Lorentz, told me so, as well as Jacob Lorentz, Jr., trustee in said deed of trust."

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

Andrew Poundstone, in the fall of 1867, or spring of 1868, had a conversation with Perry Lorentz, who told him that he had bought from Mifflin Lorentz, the executor, the land in controversy, provided his wife would consent to the purchase and surrender the seventy-four acres held under the deed of lease. Perry wanted witness to go down and see her, and induce her to surrender the seventy-four acres. Witness went to see her, and on learning what he wanted, she wholly refused to surrender the seventy-four acres. She said "she had not authorized Perry Lorentz to buy the three hundred and thirty-four acres," which embraces the land in controversy. She told witness then, and V. J. Lorentz, that provided Mifflin Lorentz would pay her the interest upon the money he received for the seventy-four acres as long as their lease runs, he might sell the same. Witness informed Mifflin Lorentz what she said; he declined to do that. She, Catharine Lorentz, said: "As for Perry's purchase, she would have nothing to do with it, on the ground that Mifflin Lorentz knew they could not pay for the same, and all he wanted was to get Perry's labor for the length of time their lease run; that they had it for the period of time as long as their deed of lease run; that Mifflin nor any other person could get them off it, and at the end of their time, Mifflin might take it and do what he pleased with it." At that time neither Perry nor his wife set up any other claim to it. Witness thinks the improvements make by Perry are worth five or six hundred dollars. The rents and profits of the two hundred and fifty-four acres are worth $125.00 per annum.

On cross-examination witness said he was interested in the estate of Jacob Lorentz, deceased, in the right of his wife and by purchase of the interests of several of the heirs.

On the 20th day of August, 1875, the court dismissed the bill with costs, and the plaintiffs appealed to this Court.

1879
Special Term.

Lorentz *et al.*
v.
Lorentz *ex'r.*
*et al.*

*J. M. Bennett,* for appellants.

*G. D. Camden,* for appellees.

JOHNSON, JUDGE, delivered the opinion of the court:

The first question presented is: Was there a parol contract made, part performed, which in equity should be enforced? The bill shows a contract proper for the consideration of and enforcement in a court of chancery. It is alleged that Jacob Lorentz agreed with Perry Lorentz and his wife, that if they would move on to a certain tract of land, which he caused to be surveyed for their use, and would improve it, that he would convey it to Perry's wife for life, remainder in fee to the children of said Perry and wife.

In *Rowton v. Rowton,* 1 H. & M., a contract of this character was held by two of the judges and not denied by the others, who thought it not proved, to be founded on a consideration, and should, when part performed, be enforced in a court of equity. Judge Tucker said speaking of the contract: "What then was old Rowton's promise? 'If you will move down and settle upon the land, it shall be yours. I have already willed it to you, and I will never take it from you while I live.' 'Then' said the son 'I will move down,' and he did so. This was a promise founded on a consideration, chargeable to him to whom the promise was made; and though no benefit should accrue to the father, the circumstance of its being attended on the part of son with a charge and expense made it binding on the father. The interpretation as understood by the son was, that he was to have an absolute estate in the land; for he expressly refused to move down *and improve the land,* unless his father would give him a *right* to it. 'My son,' said the father 'I have willed it to you and will never take it from you while I live.'"

In *Lobdell v. Lobdell,* 36 N. Y. 327, it was held, and we think properly, that a parol agreement between father

Syllabus 1.

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

and son that on condition the son will enter upon a certain tract of land and improve it the father will make him a deed for the same, and in pursuance of such agreement the son enters upon the land and occupies and improves it, is sustained by a sufficient consideration, and should be specifically performed. See also *Baldenberg v. Warden, Supra*. If such agreements could not be enforced in a court of equity, frauds might be perpetrated with impunity. A father might thus induce his son, who had the fullest confidence in him, to spend the flower of his life in making valuable improvements, and in a moment of displeasure with his son sweep it all from him ; or he might have the intention to make the deed for the land, but be prevented by death.

Such contracts, before they can be enforced in a court of equity, must be established by competent and satisfactory proof, which must be clear, definite and certain. Is such a contract proved in this case ? The answer denies the making of such a contract. There is only one witness in the case, whose testimony is on the subject of making the contract, all the other testimony of the plaintiffs relates to the declarations made by Jacob Lorentz. The one witness referred to is Jacob Lorentz, Jr., who says he was present at the time the plat of the land was made, and his father told him to examine the plat, and see if it represented the land he intended to *give* to Catharine Lorentz, the wife of Perry Lorentz, and her children. Witness asked him if he intended to give them the whole tract, "he said no ; that he thought he could not *give* them the whole tract which contained three hundred and thirty-four acres, but that he intended to *give* them two hundred and fifty-four acres out of that tract." Witness examined the plat and told his father it contained two hundred and fifty-four acres, and his father said it was all right.

There is not one word of testimony in the case to sustain the material allegation in the bill, that said Jacob Lorentz "agreed and undertook if the said Perry and

1879
Special Term.

Lorentz et al.
v.
Lorentz ex'r.
et al.

his wife and children would move upon the said land, occupy and improve it, so as to provide a living for his family, that he would convey the same to said Catharine for life with remainder to her children." This is alleged as a part of the contract, and it is a most material part thereof; in it is shown the consideration for making it, and unless this material part is proved, the contract cannot be enforced. We do not think it is proved by the other facts and circumstances in the case. All the declarations that were made by the old gentleman might as well relate to a gift of the property, as to a contract to convey it.

But if it had been clearly shown by the proof that Perry Lorentz was induced to move on the land and make improvements, on the faith of an agreement that his father would convey it to his wife and children, there is evidence in the record that is clear and uncontradicted, that the contract was afterwards modified, as in June, 1862, about three years after Perry had moved on the land, his father did make a deed for a term of ten years to a trustee for the benefit of Perry's wife and children, which they accepted, and under which they held and occupied, not only the two hundred and fifty-four acres but two other tracts, for the full term of ten years, and that the plaintiffs never set up any claim to a conveyance in fee of the land until after said term had expired. Under these circumstances the claim for specific performance as prayed in the bill cannot be allowed.

But it was also claimed in the bill that a deed was actually made and acknowledged by Jacob Lorentz to the said Catherine and her children for said land, and that a short time before his death the said Jacob directed said conveyance to be delivered to said Catherine; and the plaintiffs charge, that the acts directions and declarations of said Jacob in his last sickness just preceding his death amount to a delivery of said conveyance, and that at least the said conveyance constitutes such a written memorandum as would entitle said Catherine and her children to

a conveyance of the said land. This charge in the bill is denied; and there is not the slightest proof in the record, that Jacob Lorentz in his last sickness, or at any other time, directed such deed to be delivered to said Catharine. There are declarations proved that such a conveyance was made; but what became of it there is no evidence. To rebut the evidence that any such conveyance was made, it is shown that Jacob Lorentz, in 1864 and 1865, by writings made by himself, referred to the two hundred and fifty-four acres of land as his, and unsold. The deed, if made, was never delivered, nor directed to be delivered. If the old gentleman made such deed, he had the right to destroy it before delivery. It is true that a court of equity would furnish its aid in making effective a gift of land by a father to a child, where the gift is evidenced by even an unsealed instrument, executed by the father and formally delivered to the child. *Marling* v. *Marling*, 9 W. Va. 75. And so a court of equity might lend its aid to compel the delivery of a deed for land to a child, which by the father had been formally made and acknowledged and placed in the hands of a third party to be so delivered to the child. But there is no proof in this case that could show that any such gift was in fact made.

For the foregoing reasons the decree of the circuit court dismissing the bill with costs must be affirmed with costs and $30.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.