## CHARLESTON.

### STONE *v.* HILL.

Submitted January 16, 1902.    Decided November 29, 1902.

1. STATUTE OF FRAUDS.
     Where the evidence in relation to a parol gift of land is con-
     tradictory the Statute of Frauds ought especially to apply
     against it.  (p. 63).

2. SYLLABUS APPROVED.
     Syl. points 1 and 2, *Gallagher* v. *Gallagher*, 31 W. Va. 9, ap-
     proved and affirmed.  (p. 69).

Appeal from Circuit Court, Logan County.

Bill by Martha J. Stone against L. D. Hill and others.
Decree for defendants, and plaintiff appeals.

*Affirmed.*

MOLLOHAN, McCLINTIC & MATHEWS, J. S. MARCUM, and
J. S. MILLER, for appellants.

CAMPBELL, HOLT & DUNCAN, for appellees.

McWHORTER, JUDGE:

At the June rules 1899, Mary J. Stone filed her bill in chan-
cery in the circuit court of Logan County against L. D. Hill *et
al.,* to compel the defendant, L. D. Hill to convey to plaintiff by
apt and proper deed the legal title to a certain tract of land in
Logan County containing 150 acres, which she alleged was

given to her by the defendant L. D. Hill, her father, and which she claimed to have had in possession ever since she had taken possession thereof some fifteen years prior to the time of bringing her suit; that during such time she had paid the taxes and had made valuable improvements on said land in the way of buildings, repairing fences on and around the farm, and in repairing buildings thereon, and for the further purpose of setting aside and vacating a deed ' of trust on said tract of land executed by said L. D. Hill to the defendant, J. Cary Alderson, trustee, on 2d day of November, 1897, to secure the payment of a note for two thousand dollars executed by said Hill and bearing even date with the deed of trust, payable to J. S. Nighbert, trustee, in one year from date, with interest, and further to enjoin and restrain said Alderson, trustee, from selling or atempting to sell said tract of land under said deed of trust; and further alleging that after her father had given her the land and she had taken possession thereof in furtherance of the said gift he had caused his last will and testament to be made, which was duly signed and witnessed by which said Hill again gave to said plaintiff said tract of land thereby ratifying and confirming said verbal gift; that defendant F. M. Chafin was at the election held on the 6th day of November, 1888, elected sheriff of Logan County for the term of four years, commencing January 1, 1889; that the defendants L. C. White, J. B. Buskirk, U. B. Buskirk, C. M. Turley, James F. Vinson, S. S. Altizer, Thomas B. Farley, Moses Ferrell, Jas. Brewer, William Brewer and J. A. Nighbert, (the latter now deceased), became securities on said Chafin's official bond; that the defendant M. D. Stone, plaintiff's husband, was appointed and qualified as deputy for said sheriff, and as such deputy executed bond to said sheriff with defendant, L. D. Hill as his surety; that after said Chafin's term of office expired said M. D. Stone and he had a partial settlement of their affairs, but never a complete settlement; that Chafin made default and was largely in debt as said sheriff on account of the funds that went into his hands for which his said sureties became, and were liable; that said sureties of said Chafin, in an effort to save themselves of as much as they could on account of their said liabilities believing that said Stone was indebted to the sheriff on account of his being such deputy

caused the defendant, S. S. Altizer, to go to the home of defendant Hill, who was the surety of said Stone upon his bond to Chafin, for the purpose of making an attempted settlement of the accounts between them, in which attempted settlement it was ascertained by Altizer and Hill that defendant Stone was indebted to Chafin in about the sum of two thousand five hundred dollars (evidently meaning three thousand five hundred dollars and Altizer induced the defendant Hill to pay on said sum two thousand five hundred dollars in cash, (meaning one thousand five hundred dollars) and induced said Hill. to execute to said Nighbert his note for the sum of two thousand dollars, the balance claimed to be due on such pretended settlement, and to execute his said deed of trust to secure the payment of the same; that while said note was executed to the said Nighbert it was done for the benefit of the defendant's sureties on said official bond of Chafin; that at said pretended settlement M. D. Stone was not present and he had no knowledge that such settlement was about to be made, and he had not authorized defendant Hill, or any other person to make such settlement; that said Hill was a very old man, being 87 years of age and in feeble health and mind and incapable to transact business of any important nature, especially to enter into the adjustment and settlement of accounts pertaining to the office of the sheriff of Logan County; that the pretended acknowledgment of said pretended trust deed was taken and certified by defendant Altizer, who was interested as a part owner and beneficiary in the note attempted to be secured by said deed of trust, and being so interested under the law he could not legally act in taking such acknowledgment and in attempting to do so rendered said deed absolutely null and void, and the same constituted ro lien upon the real estate therein described; that on account of the differences between defendants, M. D. Stone and Chafin, as to the state of their accounts between them as sheriff and deputy, and the fact that the defendant Hill feels, that he was liable as surety on the bond of Stone, Hill had become angry and out of humor with the defendant Stone, plaintiff's husband and had stated that he would not convey to plaintiff the said tract of land so given to her, but that he intended to make said tract stand good for whatever Stone might owe Chafin by reason of his deputyship, and that said

Hill had attempted to encumber and cause the land to be sold in satisfaction of Stone's indebtedness to Chafin; that by reason of the fact that Hill more than fifteen years before gave to plaintiff said tract of land unconditionally, and that she took absolute possession of said tract of land more than fifteen years before under said gift, and had made and caused to be made valuable improvements, and had paid, or caused to be paid the taxes thereon, and that she having been in absolute, adverse and notorious possession of the same for more than fifteen years and up to that time exercising the acts and rights of ownership over the same, she was entitled to compel defendant L. D. Hill to convey the same to her in accordance with the terms of the said gift, and to invoke the aid of a court of equity for that purpose. The defendant, L. D. Hill, filed his answer, denying the material allegations of the bill, admitting that the plaintiff, his daughter, was living on the land in controversy; that she went upon the land with his consent, but denied that she went upon it in pursuance of any gift from him or of any promise to give it to her, or that she had been in adverse possession, or that she had paid the taxes, or made improvements thereon, affirming that the taxes had been paid by himself; that he had allowed her as his daughter to occupy the place as a home and enjoy the rents, issues and profits thereof, on account of the natural affection he felt for her as his daughter; that she had made no improvements thereon, but had allowed the place to become sadly out of repair, the improvements being worth considerably less than when she moved upon said land; that it was true respondent had made his will, which was then in his possession, and which he was still anxious to be carried out after his death, but instead of making an unconditional devise of the land in controversy, to plaintiff, he made it first subject to the payment of any liabilities which he had incurred as surety on Stone's bond; but found in a settlement with Chafin that his liability on said bond was more than three thousand seven hundred dollars, respondent by the payment of one thousand five hundred dollars with other funds and by a compromise made with Chafin reduced the charge upon said real estate to the sum of two thousand dollars and in good faith and with full knowledge of what he was doing executed the deed of trust, complained of, to secure said two thousand

dollars desiring that the residue of what the said land might sell for should go to the plaintiff; that plaintiff had no equitable claim upon the land in controversy; that it belonged exclusively to respondent and that he had a right to dispose of it as to him might seem mete and proper; that while he was anxious to assist plaintiff, as a father should assist his daughter, she together with her husband and family had enjoyed the money for which respondent was liable to defendant Chafin; that he deemed it inequitable to rob his other children of that which he intended for them in order to give to his daughter the plaintiff, the land in controversy, and prayed that the land might be sold to pay the debt mentioned in the deed of trust. The defendants, S. S. Altizer, J. B. Buskirk, N. B. Buskirk, John B. Wilkinson, administrator, of J. A. Nighbert and J. Cary Alderson, trustee, tendered and asked leave to file the joint answer of the first four defendants named, and the separate answer of said Alderson, trustee, to the filing of each of which plaintiff objected. The objection was overruled and the answers ordered filed. The plaintiff replied generally and the said four defendants averred in their answer that Chafin, sheriff, had defaulted and his sureties became liable in a large sum, by reason of such default, and Chafin with a view to partially indemnifying them assigned to them the money due him as sheriff from said Stone, as deputy, and claiming to be entitled to the benefit of whatever of said debt might be collected from said Stone, and his surety, Hill; that the one thousand five hundred dollars paid by Hill was applied by the sureties to the debt of said Chafin for which they were liable; and that the amount still due from Stone, as deptuy would not be sufficient to indemnify them for what they had paid and are still liable for; that Chafin was insolvent, unless he owned property of which they had no knowledge, and averred the insolvency of Stone, and filed a copy of decree in the chancery suit, mentioned in plaintiff's bill of *M. D. Stone* v. *Alderson, trustee, et al.,* in favor of Chafin against Stone, on account of his deputyship, for the sum of two thousnad four hundred and seventy-nine dollars and ninety-three cents, after allowing all payments, credits and setsoff, including the payment of the one thousand five hundred dollars made in November, 1897, by said Hill, and averring that the same still remained unpaid, but said decree as

against L. D. Hill was for only two thousand two hundred and five dollars and sixty-six cents, being the two thousand dollars which had been secured by him in compromise, as the full amount to settle his liability and including interest to the date of said decree, and which decree provided for the sale of the land here in controversy to satisfy said decree against Hill. Defendants averred that plaintiff herself induced said Hill to become surety for her husband, M. D. Stone on a bond as deputy for Chafin, and that she then and there consented and agreed with her father as a condition of his becoming such surety that the land should be liable for any default of said Stone and with that understanding and agreement said Hill executed said bond, and defendants claimed that plaintiff was thereby estopped to claim said land as exempt from payment of said debt and default and denied that said Hill ever gave plaintiff the land in controversy as alleged in her bill or that she made valuable improvements thereon, and averred that the rental value of said farm from the time that plaintiff had been permitted by said Hill to occupy the same had far exceeded all expenditure thereon by her, by the way of alleged improvements, and prayed that plaintiff's bill be dismissed with cost to defendants. Said defendant Alderson averred in his answer, that said Hill was induced by plaintiff to execute the bond of said Stone as deputy sheriff, and that he executed the same with a distinct agreement and the understanding with the plaintiff that the land in controversy, then vested in defendant as trustee, should stand liable for any default of said Stone, as deputy sheriff and without such agreement said Hill would not have executed said bond. The defendants, F. M. Chafin, L. C. White, and other defendants securities on said Chafin's bond also filed their answer to the same effect as the answer of the said four defendants just mentioned and denied that said Hill, at the time was incapable of transacting business, and averred that his mind was clear and strong and that he fully understood and comprehended the business and said settlement. There were many depositions taken by both plaintiff and defendants, and filed in the cause. The cause came on to be heard on the 24th day of July, 1900, having been submitted for final decree at the term preceding. The court overruled the demurrer to the bill and also the objection and exception to the answer of Alderson,

trustee, and the motion to strike out the same, and was heard upon the proofs and pleadings, and the court being of the opinion that plaintiff was not entitled to relief dismissed the bill and gave judgment against plaintiff for costs; from which decree plaintiff appealed. The cause turns upon the question, whether the defendant, L. D. Hill made such a gift to the plaintiff, his daughter, Martha J. Stone, of the tract of 150 acres of land in controversy, as may be specifically enforced in a court of equity, by a conveyance thereof, to her by the said Hill. The evidence, on this controling issue in the cause is quite conflicting, that of plaintiff and defendant Hill, is almost wholly contradictory; she swearing positively that he gave her the farm, and he just as positively that he did not. Under the authorities "A parol gift with the concurring facts established rests on the 'same foundation with a parol contract for sale partly performed and that equity will carry both into complete execution, notwithstanding the statute of frauds and perjuries for the same reason, to-wit: To prevent the statute which was designed to guard against frauds, from being used as a means to perpetrate fraud." *Burkholder* v. *Ludlam,* 30 Grat. 255. In *Gallagher* v. *Gallagher,* 31 W. Va. 9, (Syl. pt. 1), it is held: "In a suit by the purchaser for the specific execution of a parol contract, for the sale of land, the plaintiff must establish the contract, alleged in his bill by a clear preponderance of evidence. If the evidence is conflicting, and it is not clear that a contract was in fact made, the court should dismiss the bill." Three things that must concur in order to justify the court in granting specific performance of a parol contract for land are laid down in Syl. pt. 2, as follows: "To entitle a purchaser to relief in such a case it must appear, first, that the contract is certain and definite in its terms; second, that the facts proved in part performance refer to, result from or were made in pursuance of the contract proved; and third, that the contract has been so far executed that a refusal to complete it would operate as a fraud upon the purchaser, and place him in a situation in which he could not be adequately compensated in damages." *Campbell* v. *Fetterman,* 20 W. Va. 398; *Floyd* v. *Harding,* 28 Grat. 401; *Wright* v. *Puckett,* 22 Grat. 370; *Halsey* v. *Peters,* 79 Va. 60, and in *Lorentz* v. *Lorentz,* 14 W. Va. 761, it is held, (Syl. pts. 1 and 2): (1) "A parol

agreement between father and son, that on condition the son will enter upon a certain tract of land and improve it, the father will make him a deed for the same, and in pursuance and on faith of such agreement the son enters upon the land and occupies and improves it, is sustained by a sufficient consideration, and should be specifically performed." (2) "Such contracts, before they can be enforced in a court of equity must be established by competent and satisfactory proof, which must be clear, definite and certain." It will be seen that the authorities are uniform on the proposition that before such contract can be enforced in a court of equity, it must be established by competent and satisfactory proof, which must be clear, definite and certain. In *Harrison* v. *Harrison,* 36 W. Va. (Syl. pt. 3), it is held: "The evidence in case of a parol gift from father to child, should be direct, positive, express and unambiguous, and its terms clearly defined." Plaintiff says her father told her about twenty years ago, after her brother Thomas Hill died, that he intended the farm for her and that he would will it to her when he quit renting the same to Dr. Mitchell; at the same time he told her she could take possession of the lower end of the farm, that it was not rented to Mitchell and the same spring she took possession of the lower end, cultivated one field, and had been in possession ever since; that about sixteen years ago her husband built a house on the land and the same spring and summer cleared and fenced all the land below the house he built, that was tillable, and had cultivated said land ever since; that the house they built, they put Josiah Hill in for two or three years and he helped to cultivate the land; that her father still rented the balance of the farm to Dr. Mitchell until the year 1884, and in the fall of that year her father came to her house and got paper and ink to go to Crispin Stone's to get him to write his will and in a few hours came back to the house and said he had had his will written "And I have give you the Thomas Hill farm where Dr. Mitchell lives" and told me that Dr. Mitchell's time was out in November and he would not rent to him any more and for me then to move in when Mitchell moved out, and on the 16th day of November, that year, Mitchell moved out and on the same day we moved in and took possession of said farm and have lived upon and been in possession of the whole of the farm ever since that time. And

states that her father had never exacted any rent from them; that when they went there the buildings were in a bad condition, they had to recover all the buildings except the kitchen, and they repaired the porch, put out a good young orchard of pears, apple trees, grapes, plums and cherries. The fence on the farm was in bad condition and they had to repair the whole of it and build some new fences, as well as the lane fence and fence in the garden and yard and build two more dwelling houses on the farm, and when their son Okey was married they built one of the houses and put him in it, a frame house. The new houses were built on the land in the spring of 1898; that they paid the taxes the first year, then her father told her not to pay the taxes any more; that he was paying the taxes on the other girl's lands and in his will he had willed his personal property to them to be divided between them and he wanted to pay the taxes on all while he held the personal property in his own hands; that the farm being a better place than the one they had and would make them a better home her husband sold his land; that they had peaceable possession of the farm ever since they had lived on it; that she never knew of any conditions in the gift to her. Plaintiff admits that she went to see her father to get him to go on the bond of her husband, and also that she spoke to J. E. Peek Sr. or to Ale Vance to see L. D. Hill and get him to make a deed to her for the land, subject to the deed of trust given by Hill, as security on Stone's official bond. There were witnesses introduced to prove that the farm was generally known as Martha Stone's farm, or Dyke Stone's farm; from the evidence it seemed to be sometimes called Maj. Hill's farm, sometimes Martha Stone's. Plaintiff also states in her evidence, that Hill came to her house and told her he had contracted the farm to Floyd Butcher, and said he wouldn't have been in such a hurry about it, but Caroline said that plaintiff told her for him to go on and sell it and settle matters up; that she told him that she had no such talk with her sister Caroline, and that she wanted that to be the last thing done. Hill denies in his testimony that he ever gave plaintiff the land or that she moved upon it at his request, or with his consent; states that he paid the taxes on said land until the last two years, except the first year when they moved on to it; that the sheriff did not call upon him that year for the taxes and he

supposed plaintiff had paid it; that he paid the taxes because he was the owner of the land, and denied her statement that he had told her that he did not want her to pay the taxes on the land as he was paying the taxes on the other girls' land, and as long as he paid theirs he wanted to pay hers also; that he never had any such conversation, he also denied that he had told her that he had had his will written and had given her the Thomas Hill farm, where Dr. Mitchell lived. He stated that Dr. Mitchell was paying him one hundred and forty dollars a year for the part of the farm that he occupied when Mrs. Stone moved there, and that he told plaintiff that Dr. Mitchell was paying him a large rent; that the amount he paid as rent would pay all his taxes and that she told him that if he would let her move on to the land she would pay the taxes.

Hill testified that on a settlement Stone was behind something over three thousand seven hundred dollars, but witness compromised with the creditors for three thousand five hundred dollars, one thousand five hundred dollars of which he paid out of the funds which he had devised to his daughter Caroline Lowe, and for the residue gave the deed of trust on the land in controversy; that in his will he tried to divide his real estate equally between his three children, but his personal estate he gave to his daughter Caroline Lowe, as she had been taking care of him for the last ten or fifteen years; that he had paid one thousand five hundred dollars on the Stone debt in order to relieve plaintiff as far as possible and thought it equitable between his children; that as the family of M. D. Stone (that is plaintiff and her husband) and their children had enjoyed the fruits of his defalcation the lands intended for her should be responsible for the balance and that his other children should not be responsible for his default. L. D. Hill states that plaintiff sent J. E. Peck Sr. to him and tried to get him to make a deed to her subject to the trust deed securing two thousand dollars for which he was liable on Stone's bond, to Chafin, he said they wanted the deed in order to enjoin the sale of the land under said trust deed and to get further time in the matter; that he refused to make the deed at that time as he did not want to complicate matters any further, but was willing to give her the residue of the land after the debt was paid, and that he had said this all the time. Defendant Hill further stated that

he never understood that plaintiff, or any other person was claiming the land as her property; that four or five years ago. W. F. Butcher came to him and said he wanted to pale in the graveyard, which was on the place; that he asked plaintiff and "She told him that he must come to me as the land belonged to me; and last spring Andy Fowler came to me for the purpose of getting a way to the timber over the land and said that he had asked the plaintiff for it and that she sent him to me as I was the owner of the land." He further stated that he let plaintiff remain in possession of the land without paying the taxes or rent because he wanted to help her along as she was his daughter. He further stated that the permanent improvements made by plaintiff on the farm were made long after he had acceded to her request to go on her husband's bond. There was much testimony given by other witnesses, some tending to prove that the farm was held by plaintiff under the gift from her father and some tending to show that the land was always regarded as Hill's land and that he was still the owner of it. There was no evidence touching the mental condition of Hill, or that his mind was feeble. He states that he was 89 years of age at the time his deposition was taken. According to the evidence the rental value of the farm during the fifteen years it was occupied by plaintiff and her family was about two thousand one hundred dollars, while the evidence shows that the permanent improvements could not have exceeded five hundred dollars or six hundred dollars. In *Rowton* v. *Rowton,* 1 H. & M. 91, it is held: "Where the verbal evidence is contradictory the statute of frauds ought especially to apply against it." And in *Wack* v. *Sorber,* 2 Whart. (Pa.) 387, Syl., "To take a parol gift of land out of the statute of frauds it is necessary that it should appear that the donee had made improvements, which added to the permanent value of the land; and that by reason of his expenditure upon such improvements, he would be prejudiced by the rescinding of the contract. Where the benefit to the donee by the possession of the land has exceeded his expenditure upon it, the statute will be enforced." This case lays down a rule that would seem to be a little harsh except in cases where the rights of creditors might be affected, ordinarily it should not apply between parent and child or in cases where the relationship between the parties or the circum-

stances would imply a moral obligation on the part of the grantor, which he had recognized, to assist the vendee. In case at bar there is too much conflict in the evidence touching the gift from Hill to his daughter, the plaintiff, to warrant the appellate court in disturbing the decree of the circuit court. Taking the whole evidence together with the circumstances of the case and there cannot be said to be a decided preponderance thereof in favor of the plaintiff, indeed the preponderance seems to support the decree and the same will be affirmed.

*Affirmed.*