# CHARLESTON.

DOYAL MOORE, AN INFANT ETC. *et al. v.* H. P. MOORE *et al.*

Submitted September 21, 1920.   Decided September 28, 1920.

1.  WITNESSES—*Deposition Which Defendant's Deposition, then Taken, Contradicted Held Admissible After His Death.*

    Where the deposition of an interested party has been taken in a chancery cause to prove transactions had with the defendant whose testimony is then taken in contradiction and explanation of the evidence of such interested witness, and such defendant dies before submission of the cause for decision, the deposition of such interested witness is competent evidence against such defendant's personal representative and heirs-at-law, against whom the suit is revived, under the exception contained in § 23, ch. 130 of the Code permitting the introduction of such evidence when such deceased party has been examined on his own behalf.   (p. 13).

2.  SPECIFIC PERFORMANCE—*Oral Contract of Sale Enforced, Where Purchaser Has Paid Part of Price, Taken Possession, and Made Improvements.*

    A Court of equity will specifically execute an oral contract for the sale of land by a father to a son where the son has

paid part of the purchase money, has been placed in posses-
sion of the land, and has made valuable and permanent im-
provements thereon.    (p. 14).

3.   VENDOR AND PURCHASER—*Without Stipulation Purchaser Lia-
     ble for Interest Only After Possession.*

     The general rule in contracts for the sale of land is that
     where there is no stipulation for the payment of interest,
     the purchaser is liable for interest on the purchase money
     only from the time he takes possession of the land, and if
     the vendor retains possession, or secures possession, before
     the payment of all of the purchase money, he cannot claim
     interest thereon during the time he withheld such possession.
     (p. 17).

4.   COSTS—*Where Decree Modified to Correct Inadvertent Error,
     Appellee is Prevailing Party.*

     Where the decree of a circuit court is affirmed upon appeal
     to this Court upon all controverted questions, but is modi-
     fied so as to correct an error inadvertently made which was
     not called to the attention of the court below, and on account
     of which no objection was there made, the appellee will be
     held to have substantially prevailed in this court, and costs
     will be awarded to him against the appellant on such appeal.
     (p. 17).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Clay County.

Suit for specific performance by Doyal Moore, an infant,
and others against J. K. Moore, pending which J. K. Moore
died, and the case was revived against H. P. Moore and others
as his heirs and personal representatives.   Decree for plaintiffs,
and defendant H. P. Moore appeals.

*Modified and affirmed.*

*B. C. Eakle* and *W. E. R. Byrne,* for appellant.

*J. E. Springston* and *Horan & Pettigrew,* for appellees.

RITZ, JUDGE:

This suit was instituted by Doyal Moore, infant son of the
late I. C. Moore, or Clayton Moore, against J. K. Moore, grand-
father of said Doyal Moore, and father of said I. C. Moore,
to compel the specific execution of an alleged contract for the
sale of a tract of land by the said J. K. Moore to the said I. C.
Moore in his lifetime.   Pending the suit J. K. Moore died,

and the same was revived against his personal representative and heirs-at-law. From a decree requiring the contract to be specifically executed, the defendant H. P. Moore prosecutes this appeal.

It appears that in the year 1906 I. C. Moore, a son of J. K. Moore, married, and at the suggestion of his father moved into a house on what is referred to in the record as the Rogers place, which belonged to his father; that his father at that time told him he would give him fifty acres of this land, but did not make any deed therefor, or do anything more than to permit him to move into the house and live upon the land, and cultivate the same. The Rogers tract contains 80 1-2 acres, and it appears that at that time the fifty acres, which it is alleged Clayton Moore was to have by gift, was in no wise defined except that it was to be a part of the Rogers tract. In 1908 the house upon this place, in which I. C. Moore was then living, burned, and the said I. C. Moore desired to rebuild on a different location. His father objected to this, and it seems that the son was in some doubt as to whether he would remain on the place under the circumstances; that his father thereupon offered to convey him one hundred acres, of which fifty acres would be the fifty acres he was to give him, and the other fifty acres a sale at ten dollars per acre, and which one hundred acres included the Rogers farm of 80 1-2 acres and 19 1-2 acres to be taken off of an adjoining tract owned by the father, the father retaining the minerals during his life. There was some objection on the part of the son to this arrangement for awhile, but according to the testimony he finally agreed thereto, and the father agreed that he would convey to him the one hundred acres upon the payment of $500.00, it being the intention to include fifty acres as a gift, and fifty acres as a purchase at ten dollars an acre. I. C. Moore, it is testified, told his father that he would pay him $175.00 of the $500.00 at once, being the proceeds of a sale of some cattle which he had arranged to make, whereupon his father told him if he was going to sell his cattle for $175.00 he would take them and credit him with that amount upon the purchase money, and this was done. I. C. Moore thereupon proceeded to erect a new house on the Rogers place, and when it was so far completed as that it could be occupied, moved into

it. It does not appear that he had entirely completed it at the time of his death two years later. In addition to building a house his widow testifies that he planted an orchard of about one hundred trees upon the land; that he cleared up several fields amounting to some twelve or fifteen acres, and fenced the same; and also dug a well to be used in connection with his residence; and made some other inconsiderable improvements. In the summer of 1910 I. C. Moore, without making any further payment upon the property, and before the 19 1-2 acres which he was to receive off of the tract adjoining the Rogers tract, had been laid off or defined, departed this life, leaving surviving him his widow and the plaintiff Doyal Moore, an infant son. The widow thereupon removed to the residence of her father-in-law, J. K. Moore, where she remained for a short time. J. K. Moore was appointed administrator of the estate of his deceased son, and took possession of all the property on the place, as well as of the place itself. It is shown by the widow, in which she is corroborated by other witnesses, that on one or two occasions he suggested that he would convey the one hundred acres of land to his infant grandson upon the payment of the balance of the purchase money, and the widow expressed her purpose to pay the balance of the purchase money and take the land for her son, but finally J. K. Moore determined that he would pay the widow the $175.00 and keep the land; that he thereupon paid over to the widow the sum of $175.00 and told her that inasmuch as her son was very young and would not be able to take care of the land he would take it back. It appears that the widow accepted the $175.00, but whether she agreed to a rescission of the sale or not does not appear, nor is it very material, for she could not dispose in that way of the interest of her infant son, even if she had undertaken to do so. The above is the state of facts testified to in substance by the widow of I. C. Moore. She is corroborated by many witnesses who had conversations with J. K. Moore in his lifetime in regard to the transaction, most of whom are strangers and disinterested, but some of whom are other children of J. K. Moore, who in testifying in favor of the plaintiff in this case were testifying against their own interest, so that it might be said that peculiar

weight would be given to their evidence. After all of this evidence was taken J. K. Moore himself testified denying any contract between him and his son Clayton Moore, and denying, or attempting to explain all of the conversations and admissions testified to by other witnesses. Some other evidence was introduced for the defendants of an inconclusive character. It appears that sometime after the death of Clayton Moore, J. K. Moore conveyed this Rogers place to his son H. B. Moore, who is the appellant here, which deed was not placed upon record, however, until after the death of J. K. Moore. This deed provided that as a consideration for the conveyance H. B. Moore should pay certain sums of money to his brothers and sisters, including also a small sum to be paid to the plaintiff in this case.

The appellant contends that the widow of the late I. C. Moore was not a competent witness at the time this case was heard, inasmuch as J. K. Moore was at that time dead, and that if her evidence is discarded there is no definite evidence in the case as to the subject matter or the terms of the contract. He contends further that even admitting her evidence, the contract is not sufficiently proved to justify the court in specifically executing it, and that the part performance and possession shown is not sufficient to prevent the application of the Statute of Frauds. There are some other contentions of minor importance which it will not be necessary to consider unless we find that the plaintiff has met the above objections and is entitled to some relief in the case.

It is quite true that should it be held that I. C. Moore's widow was an incompetent witness at the time of the hearing in this case because of the death of J. K. Moore, her father-in-law, then there is no evidence in the case which sufficiently identifies the subject matter of the contract, or that sufficiently indicates its terms to justify the granting of relief, so that if the appellant is correct in this contention the bill will have to be dismissed. To support his contention in this regard he cites the cases of *Zane* v. *Fink,* 18 W. Va. 693, and *Seabright* v. *Seabright,* 28 W. Va. 415, each of which hold that in order for the evidence of a witness to be admissible the witness must be competent at the time of the hearing, and if at that time such

witness is incompetent by reason of the death of a party to the suit, and by reason of the fact that he is an interested party, and his testimony relates to personal transactions with such deceased party, it cannot be received. If this principle is to be applied as broadly as it is stated in the points of the syllabi in the two cases above referred to, the evidence of the widow of Clayton Moore cannot be read in this case, but when we read the opinions of the court in those cases we find that the reason given for rejecting the evidence of an interested party under circumstances like this is that the adverse party has not had the opportunity to testify in denial or explanation of the evidence given against him, and a reference to our statute, § 23, ch. 130, will show that the prohibition as to the admission of evidence of an interested party as to communications with the deceased does not apply where the deceased has been examined in his own behalf. So that the principle announced in the cases above cited does not apply to the case we have here. Not only does the reason not exist for rejecting this evidence, for J. K. Moore did fully testify in explanation and contradiction thereof, but the statute expressly admits it under the circumstances of this case.

Has the plaintiff proved the contract relied upon for recovery? The court below found upon the evidence that the contract was sufficiently proved as to the 80 1-2 acres Rogers tract, it being a definitely defined boundary of land, but refused to execute it as to the 19 1-2 acres which was to be but never had been cut off of an adjoining tract, because of the uncertainty in that regard. If the testimony of the widow of I. C. Moore is entitled to credence, and as we have before stated, it is supported by many other witnesses who had conversations and transactions with J. K. Moore inconsistent with any other theory than that he has sold this land to his son I. C. Moore, the contract is clearly proved, and the court below was entirely justified in its finding in this regard. The only difficulty is as to the indefiniteness of the 19 1-2 acres outside of the Rogers tract, and as to this the court refused specific performance, but allowed no abatement of the purchase price because thereof. The plaintiff may. have been entitled to an abatement on this account, but he did

not ask it.  The part performance proved, which it is contended prevents the application of the Statute of Frauds, is the payment of part of the purchase money.  Of course, this of itself would not prevent the application of that statute, but in addition to that I. C. Moore remained in possesion of his land until the time of his death.  It is contended that this possession of I. C. Moore was taken before the contract was finally agreed upon, and this is in a sense true, but it appears that at the time he first moved upon this land he did it under an arrangement by which his father had agreed to give him fifty acres thereof, and that all of his possession of this tract of land was under that arrangement, or the modified arrangement made two years later, in 1908, at the time he began the erection of a new house.  This of itself might not be enough to justify the execution of the contract, but in addition it is shown that the son made considerable improvements upon the tract of land.  While it is contended that they are not of large value, it must be borne in mind that the tract of land itself was not of very considerable value at that time, or was not so considered by the parties, and that as compared with the value of the tract of land these improvements were substantial in their nature.  A dwelling house was erected which was not entirely completed at the time of I. C. Moore's death, but so far completed as to be habitable. The exact character of this house does not clearly appear, but we are justified in the assumption that it was such a dwelling as was ordinarily used by farmers in that neighborhood.  In addition to this a well was dug for use in connection with the dwelling, an orchard was planted which, of course, as the years went on would grow in value; considerable of the land was cleared and fenced.  Upon proof of all these facts we think the court below was justified in his holding that there had been sufficient part performance of the contract to make the Statute of Frauds inapplicable.  Specific performance of such contracts as this has been sustained by this Court in many cases, among them *Tracy* v. *Tracy,* 14 W. Va. 243; *Lorentz* v. *Lorentz,* 14 W. Va. 761; *Pack* v. *Hansbarger,* 17 W. Va. 313; *Middleton* v. *Selby,* 19 W. Va. 167; *Kimmins* v. *Oldham,* 27 W. Va. 258; *Frame* v. *Frame,* 32 W. Va. 463; *Harrison* v. *Harrison,* 36 W. Va. 555; *Crim* v. *England,* 46 W. Va. 480.  Many

more cases to the same effect might be cited, but these sufficiently illustrate the doctrine, and justify the decree so far as the circuit court found that the plaintiff was entitled to specific execution of the contract.

. The appellant assigns as error that the lower court held that the widow of I. C. Moore was entitled to dower in this tract of land. The decree of the circuit court requires the 80 1-2 acres of the Rogers tract of land to be conveyed to the plaintiff Doyal Moore subject to the dower of the widow of I. C. Moore. The appellant contends that the widow is not entitled to dower in this land; that because she accepted the $175.00, the part payment of the purchase money when it was offered to her by J. K. Moore, she relinquished at least any right she might have in said tract of land. Conceding that this may be true, we do not see how the appellant is adversely affected by the decree. He is only required to convey subject to the dower interest of the widow, and is not required by the decree to convey anything to the widow, so that it might be said that the decree recognizes his right to the widow's dower. At any rate, it permits him to retain that interest in the land.

It is also contended that the circuit court erred in its decree compelling H. B. Moore to convey the title to the plaintiff. As before stated, H. B. Moore got a deed for this tract of land from his father which he placed on record after his father's death. The bill proceeds, of course, upon the theory that J. K. Moore, after he made the contract of sale with I. C. Moore, was a trustee holding the legal title to the land as security for the payment of the balance of the purchase money, and that when J. K. Moore died this same interest would have passed to his heirs had it not been for the fact that he had executed the deed to his son H. B. Moore. When H. B. Moore accepted the deed for this tract of land, as the court below finds upon entirely sufficient evidence, with full knowledge of his brother's rights therein, he took just that interest which his father then had, that is, he became a trustee holding the legal title as security for the payment of the balance of purchase money. It is true the court in its decree terms him a *pendente lite* purchaser. This expression is not quite accurate, the court clearly meaning

to say that he was a purchaser with full notice of his brother's rights, and was affected by all the equities in favor of his brother I. C. Moore. When H. B. Moore filed his answer he set up this deed from his father to himself, and claimed to be a purchaser in good faith. This contention he was unable to sustain. It is true the bill does not charge him as trustee holding the legal title because of this deed, but he is made a party to the bill as executor of his father's estate, and as one of his father's heirs-at-law, and when he introduced a defense, which shows him to be the sole trustee, instead of only one of several trustees, we perceive no reason why the court could not decree that he convey the Rogers title upon payment of the purchase money for which it was held as security. He was before the court both in his individual right and as executor of his father's estate, and full defense was made upon the merits of the case, and while it would have been better to have amended the bill upon the discovery of this deed, we do not think the failure in this regard would justify a reversal of the decree when it appears that the interests of all parties have been fully protected, and no useful purpose could be subserved by such reversal. It would be the sacrifice of substance to mere form.

It is also insisted that the court erred in not requiring the plaintiff to pay interest upon the balance of the purchase money, to-wit, $325.00, from the date of the contract to the date of its payment. As we have before shown, upon the death of I. C. Moore in 1910, J. K. Moore took possession of this tract of land, and he and his successors have had the possession and use of it ever since. There being no stipulation in the contract for the payment of interest, and no particular time specified for the payment of the purchase money, the court properly declined to allow interest during the time the vendor had the possession of the land and enjoyed the benefits thereof without accounting to the vendee. *Rutherford* v. *Provident Life & Trust Co.,* 86 W. Va. 491, 103 S. E. 273; *Sleenrod* v. *R. R. Co.,* 27 W. Va. 1.

Appellant insists that the circuit court erred in requiring him by its decree to convey this Rogers farm to the plaintiff with covenants of general warranty of title, his contention being

that if the plaintiff was entitled to the specific execution of the contract at all he, the appellant, should only be compelled to convey such title as he received. This contention is well taken. Instead of requiring this conveyance to be made with covenants of general warranty and the other usual covenants, it should have simply required the appellant to convey with covenants of special warranty of title. The fact that appellant was required to join in the deed as executor of his father's estate is not material. In fact, this may have been entirely proper in view of the fact that it is not clear whether the balance of the purchase money should be paid to the executor or to H. B. Moore, and in this view we think it not improper for the executor to join in the deed for the purpose of showing that the balance of the purchase money had been paid.

It follows from what we have said that the decree of the circuit court will be modified by striking out the requirement that the conveyance be made with covenants of general warranty and the other usual covenants, and substituting therefor with covenants of special warranty. How will this modification affect the question of costs in this court? The costs in this court are awarded to the party substantially prevailing, and it cannot be doubted but that upon every substantial contention the appellee has prevailed. In fact it may be said that he has prevailed upon every controverted proposition. It appears with reasonable certainty that this error in regard to the warranty was a mere inadvertence. The appellee does not in this court contend for it, nor does it appear that the appellant called attention to it in the court below and objected to the decree upon that ground. We have heretofore held that where the appellee substantially prevails as in this case, but the decree is modified so as to correct some error caused by inadvertence, to which the lower court's attention was not called, and which was not objected to by the appellant, we will award costs in this court to the appellee. *Sharp* v. *Kline,* 82 W. Va. 13; *Benedetto* v. *Di Bacco,* 83 W. Va. 620; *Freeman* v. *Swiger,* 83 W. Va. 425.

The decree of the circuit court will therefore be modified as above indicated, and as so modified affirmed with costs in this court to the appellee.                    *Modified and affirmed.*