# CHARLESTON.

SAMUEL S. HINES *et al.* v. KATE A. HILLEARY *et als.*

Submitted April 26, 1921.   Decided May 3, 1921.

1.   LOST INSTRUMENTS—*Extent of Plaintiff's Rights Must Be Determined to Establish Lost Deed Where Description Disputed.*

Where in a suit to establish a lost deed, a dispute arises as to the correct description of the land actually sold and conveyed, it is necessary for the court to determine the extent of the plaintiff's rights in order to the award of proper relief. (p. 616).

2.   SAME—*Where Boundaries in Lost Deed Disputed and Defendant's Contentions in Their Offer to Convey is Found Correct Conveyance Should be Directed Without Costs to Plaintiff.*

Where in such suit there is a dispute as to the boundaries of the land sold, and the defendants in their answers offer to make a deed to the plaintiff conveying the land in accordance with their contention as to the correct boundaries thereof, and upon a hearing their contention in this regard is found to be correct, the court should, especially where some of the defendants are infants, enter a decree directing the conveyance in accordance with such contention, but without costs to the plaintiff.   (p. 616).

Appeal from Circuit Court, Webster County.

Suit by Samuel S. Hines and others against Kate A. Hilleary and others. Decree for defendants, and plaintiffs appeal.

*Reversed and remanded.*

*Morton & Wooddell, Haymond & Fox* and *Byrne, Littlepage & Simms,* for appellants.

*Young & McWhorter* and *Hall Bros.,* for appellees.

RITZ, PRESIDENT:

The plaintiff S. S. Hines brought this suit for the purpose of securing a deed for a certain tract of land purchased by him from one R. A. Arthur in the year 1872. From a decree denying him the relief prayed for he prosecutes this appeal.

It appears that in the year 1872 one R. A. Arthur was the

owner of a tract of land supposed to contain 241 acres which had theretofore been granted to him by the State of Virginia. In that year he sold part of this tract of land to the plaintiff S. S. Hines, the part so sold being referred to as 140 acres, and later the residue was conveyed by him to some of his children, and described as 101 acres. At the time Hines made this purchase from Arthur he did not pay all of the purchase money, and no deed was made to him conveying the land. There was, however, a title bond or executory contract of some kind executed, and Hines put in possession of the land. He also gave notes for the deferred installments of purchase money. These notes were not paid at maturity, and subsequently, in 1887, a suit was brought by the assignee of the notes to subject the real estate to sale in satisfaction of the purchase money debt. In this suit a deed was filed from Arthur to Hines conveying the tract of land purchased in 1872, which deed the court held to be a good, sufficient and valid conveyance, in accordance with the executory contract, and ascertained the balance of purchase money due, and decreed sale of the land in satisfaction thereof, unless the same was paid.

Shortly after the entry of this decree the courthouse of Webster county was destroyed by fire. The record of this suit, including the deed filed therein, was also destroyed, and the only thing that remains is the final decree, somewhat mutilated, in a book which was rescued from the fire. Subsequent to this fire Hines paid off the balance of the purchase money as ascertained by the decree, but he says that he did not get the deed filed in the suit. It does not appear that he made any effort to secure a deed conveying the land to him until the institution of this suit. The title bond or executory contract executed in 1872 is not produced, and it is contended that the same is lost. The controversy in this case involves the location of the line separating the tract of land sold to Hines from the remainder of the 241-acre tract. The defendants are the heirs-at-law of R. A. Arthur, Hines' vendor. The adult defendants filed their answers in which the sale by their ancestor to Hines is admitted, and in which

they offered to execute to him any proper deed conveying the land actually sold, as claimed by them, but further insisting that the description in the bill filed by Hines is not the correct description. The defendants insist that the tract of land sold to Hines is separated from the remainder of the 241-acre tract by a line extending up Grassy Creek to Miller's Creek, and thence up Miller's Creek to the opposite side of the 241-acre tract; while Hines contends that the division line is a line running on a particular course from a corner on Grassy Creek straight across the 241 acres, intersecting the opposite line at a point some ten to twelve poles distant from the point where it is intersected by Miller's Creek. The dispute between the parties involves the small piece of land lying between this line contended for by Hines and Grassy Creek and Miller's Creek, amounting to about six acres.

Hines attempted to prove that the title bond executed by R. A. Arthur to him in 1872 fixed the division line in accordance with his contention. His principal reliance to establish this fact is some field notes left by the surveyor who went upon the ground at the time. These field notes are produced, and they show that the surveyor began at a certain corner, which is not in dispute, and ran a line to a forked beech tree near Grassy Creek, which corner is not in dispute, and thence set his instrument on a course S. 32° E. It does not appear that any further surveying was done. Several witnesses who were present at the time state that no further surveying was done. One of the witnesses who was present at the time of the survey says that the line contemplated intersected with Miller's Creek some distance above its mouth. The line run across the 241-acre tract on the bearing S. 32° E. would intersect the opposite line ten to twelve poles distant from the point where it is intersected by Miller's Creek. The line indicated by this witness does not correspond with the division line contended for by either of the parties, but runs about half way between the two. Hines likewise introduced some evidence to show that since he moved upon the land a number of years ago he did some

clearing on the south side of Miller's Creek and Grassy Creek, which would be upon the Arthur land according to the defendants' contention, but if he did any such clearing the same was abandoned many, many years ago, and no improvements have been placed upon the south side of the creek since that time.

On behalf of the defendants it is shown by a number of witnesses that they have known this tract of land ever since Hines made the purchase from R. A. Arthur, and ever since he moved thereon, and that he never did make any improvements or do any clearing south of the line claimed by the defendants; that the same was all in the original forest until recently when the timber was cut therefrom. Several witnesses testify that Hines told them, upon inquiries being made, that his line ran with Grassy Creek and Miller's Creek, and that the land on the opposite side belonged to the Arthurs, and that on occasions when they were repairing the road up these creeks he, being superintendent of roads, cautioned them not to procure any timber on the opposite side of the creek as the same belonged to the Arthur heirs. The most convincing evidence, however, is the fact that after the destruction of the courthouse by fire a commissioner was appointed for the purpose of taking evidence to establish the lost records. Hines appeared before this commissioner and made a statement under oath in regard to his tract of land, and in this statement describes it exactly in accordance with the contention of the defendants. This was made before any contention arose between them, and without any solicitation or inducement upon the part of the defendants, and without their knowledge, and evidently was a statement made by him upon mature consideration and deliberation, for its purpose was to establish his title to the tract of land which he claimed. He explains that in making this statement he did not have the surveyor's notes before him at that time, and that he was mistaken in giving the boundaries as he did. It may be true that he did not have the surveyor's notes before him, but if, as he now contends, he was claiming land south of Grassy Creek and

Miller's Creek during the time that he had owned this tract of land he knew this fact then as well as he knows it now. According to his contention now he had cleared some of this land south of the creek, and had fenced it before this time. His evidence furnishes no satisfactory explanation of this statement, and it is entirely inconsistent with the contention made by him now, and taken in connection with the other evidence offered by the defendants we think shows conclusively that the contention of the defendants as to the boundary line is correct, and that the court below could not have found differently from what he did upon this question.

The final decree entered in the case denied Hines any relief and dismissed his bill. This is an apparent oversight on the part of the court below, for the defendants admit that he is entitled to a deed for the tract of land as described by them, and offer in their answers and in their testimony to make the same. Of course, he refused to accept such a deed. This is all he was entitled to, and his refusal to accept it made necessary the litigation. The only point in controversy between the parties was the proper location of this boundary line, and the court having found with the defendants upon this controversy, and Hines having refused to accept the deed offered to him, which was all he was entitled to, correctly determined the merits of the case to be with the defendants. It is insisted, however, that it was error to dismiss the bill without providing therein for a deed conveying the land in accordance with the defendants' contention. Whether the suit be treated as one for specific performance, or as a suit to establish a lost muniment of title, makes little difference. In either event Hines was entitled to some relief. So far as the defendants are adults he could have had this relief without any suit. There are some infant defendants, however, whose title must be conveyed by a commissioner. If the defendants were all adults it might very well be said that Hines would be entitled to no relief in this case, for the reason that they were perfectly willing to voluntarily make him a deed conveying everything to which he is entitled, and this appearing in

the pleadings and in the proof in the case, it would, perhaps, not have been error for the court to dismiss his bill and leave him free to take what was offered, but inasmuch as it is necessary to convey the interest which may be in some infants who are heirs of R. A. Arthur the court should have provided that relief in this suit, and should have entered a decree providing for a conveyance to Hines by the parties themselves so far as they were *sui juris,* and by a commissioner of the court as to the infants, and in case the adult defendants do not make such deed, then that their interests be likewise conveyed by a commissioner. Such a decree, however, would not carry costs against the defendants in the court below, for the reason that it appears that the adult parties, the only parties against whom costs could be decreed in any event, were perfectly willing to make the conveyance, and offered to do so, and it was not the fault of the infants that the deed which had been made to Hines in the suit in Webster county was destroyd by fire. While he no doubt had a right to bring a suit to establish his lost muniment of title, still the expense of such suit must be borne by him, unless the same is made necessary by the other party.

Our conclusion is, therefore, to reverse the decree of the circuit court of Webster county and remand the cause, with directions to provide for the execution of a deed to Hines for the land sold to him by the ancestor of the defendants described in accordance with their contention. The appellees will be entitled to costs in this court, for the reason that it is plain that the error for which the decree is reversed would not have been committed had Hines been willing to accept what he is entitled to. The only substantial controversy in the case is the correct location of the boundary line, and as to this the defendants prevail, and are entitled to their costs as the parties substantially prevailing. *Moore* v. *Moore,* 87 W. Va. 9, 104 S. E. 266, and authorities there cited.

*Reversed and remanded.*