(152 App. Div. 601.)

## TURNER v. BRYANT.

(Supreme Court, Appellate Division, Third Department. September 27, 1912.)

VENDOR AND PURCHASER (§§ 172, 196, 199*)—CONTRACT TO CONVEY—ACCOUNT-
ING.

On an accounting under a contract to convey a sawmill and its site, the purchaser is not chargeable with interest on the price while the vendor was in possession with the purchaser's assent, nor is the vendor

chargeable with use and occupation during that time. The purchaser is properly charged with premiums on insurance paid by the vendor for the purchaser's benefit, with interest thereon to the time of a fire which destroyed the mill; and the purchaser should be credited with insurance proceeds received by the vendor, entitling him to a conveyance on payment of a balance due under the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 349–351, 401–406, 1440; Dec. Dig. §§ 172, 196, 199.*]

Appeal from Trial Term, Franklin County.

Action by Charles H. Turner against Edwin R. Bryant. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

See, also, 143 App. Div. 972, 127 N. Y. Supp. 1147.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Kellas & Genaway, of Malone, for appellant.

R. M. Moore, of Malone, for respondent.

SMITH, P. J. The judgment appealed from authorizes a discontinuance of the action by the plaintiff upon his request and dismisses the defendant's counterclaim. To understand the questions involved, a short history of the litigations between these parties becomes necessary. In 1896 the defendant Bryant contracted to purchase of one Parmelee a mill site containing 5.67 acres of land. Bryant was to take possession and to keep the buildings in repair, and insured for two-thirds of the value. In the same contract was an agreement to sell to Bryant certain standing timber, and the consideration was to be the sum of $14,207. In the next year, 1897, this plaintiff purchased from Parmelee the mill site and the standing timber which Parmelee had contracted to sell to Bryant, and at the same time entered into a contract with Bryant, which recites:

"Whereas, the said Charles H. Turner has purchased of A. B. Parmelee & Son all their interest in and to a certain contract made by them with said Edwin R. Bryant, dated February 15th, 1898, for the sale of certain lands and timber duly set forth in said contract, and

"Whereas, the said Edwin R. Bryant has duly surrendered and assigned all his interest in said contract to said Charles H. Turner, and has received from said Turner a discharge of his, said Bryant's, indebtedness upon said contract."

The contract then provides that Bryant agrees to saw and load upon cars certain timber at the price of $2 per thousand feet, and Bryant guarantees that there are 6,000,000 feet of spruce and pine upon said land in merchantable logs for lumber, and that he will make up any deficiency in said 6,000,000 feet. Turner agrees to pay $2 per thousand feet for the sawing of the lumber, and for a deficiency of the lumber Bryant is to pay $2.50 per thousand feet. At the termination of the contract, Turner agrees to convey to Bryant by warranty deed the said mill site, containing 5.67 acres of land. It was agreed that Turner should keep the mill insured at the expense of Bryant, and the contract was to be completed in two years from date. The contract recites the mill as "the mill now occupied by said Bryant." It

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

developed that the guaranteed amount of spruce and pine was not found. Bryant did, in fact, saw large amounts of lumber for Turner. After the time limit of the contract in May, 1900, Bryant brought an action against Turner and his wife, making no personal claim against the wife, to enforce his rights under said contract. He asked for a reformation of the contract, and that in case any money was found to be due to Turner from the plaintiff for the right to pay the same, and thereby make himself entitled to a deed. This action was referred in May, 1902. Upon the trial the claim for reformation was denied, and it was determined that Bryant was not entitled to a deed of the mill site until he made up the deficiency in the spruce and pine in the sum of $2,186.16, and judgment was directed dismissing the complaint, unless the plaintiff should pay to the defendant Turner within 20 days of the service of a copy of the report $2,186.16, and, upon said payment being made, Turner was required to execute a deed. Bryant appealed to the Appellate Division, and there the judgment was affirmed requiring Bryant as a condition precedent to the right to redeem and pay to Turner the $2,822, with interest from January 1, 1900, together with costs, and provided that, upon the payment of this sum amounting at the date of the judgment of the Appellate Division to $4,232.42, Turner should deed the sawmill site to Bryant. There was another action pending between Turner & Bryant, wherein Bryant procured a judgment against Turner, which with costs and interest amounted to about $2,000. Thereafter, and upon the 18th day of December, 1908, this plaintiff brought this action against Bryant to have this judgment of $2,000 offset against his claim in the action upon the land contract, and for an accounting to have determined what balance remained unpaid, and for a foreclosure of the land contract and a sale of the property to satisfy the amount that remained unpaid thereupon. In this action Bryant counterclaimed by alleging that since the commencement of the action in 1900 by himself against Turner the mill had burned, and Turner had received about $4,000 insurance which rightfully belonged to him, and that, furthermore, Turner had received large amounts of money for the use and occupation of the mill, which in equity belonged to him. After the issue thus formed, execution was issued upon the judgment of Bryant against Turner, which had been assigned to Bryant's attorney, and, being unable to procure a stay of the sale under that execution, Turner was compelled to pay the judgment. He thereupon made application to discontinue this action and tendered the costs to Bryant. This was opposed by Bryant upon the ground that he had the right to have a determination of his counterclaim, and the motion was denied. The action came on for trial, and the trial judge held that inasmuch as the Appellate Division had determined the amount which must be paid, and that said amount must be paid within 30 days, and inasmuch as the said amount had not been paid within 30 days, Bryant had no cause of action. Upon application, then, to the Appellate Division, this judgment was amended by striking out the requirement that the payment should be made 30 days after the service of a copy of an order, and adding thereto these words:

"This determination shall not be construed to prevent the application of such amounts of any lawful deductions for insurance on sawmills received by Charles H. Turner or for the use of said sawmills by said Charles H. Turner subsequent to the commencement of this action."

After the modification of this judgment by the Appellate Division, a new trial of this action was granted, and from the judgment rendered upon the decision of this new trial this appeal is taken. The judgment appealed from, as has been before stated, authorizes the plaintiff to discontinue upon his request without costs, and dismisses the defendant's counterclaim on the theory that the defendant was not entitled to any allowance either for insurance or for rents and profits received by Turner since the commencement of that action.

The modification of the decision of the Appellate Division gave to Bryant only lawful deductions for insurance on the sawmill burned and for the use of the sawmill by Turner subsequent to the commencement of the action. It would seem clear that Bryant's rights under the Parmelee contract had been surrendered. Under his contract with Turner, however, he was impliedly, if not expressly, given possession of the sawmill site during the performance of the contract. He afterwards surrendered possession to Turner. He claims that possession was surrendered under an agreement whereby Turner was to allow him 75 cents for each thousand feet of timber sawed. The trial court has found that such an agreement was not made. His rights, therefore, must be determined as though with the right to possession during the continuancy of the contract he had voluntarily rendered possession to his vendor. In such case, his rights would seem to be akin to the rights of a mortgagee to whom a mortgagor had voluntarily surrendered possession of mortgaged premises. In such case the mortgagor would be required to account for rents and profits.

In 39 Cyc. p. 1630, the liability of a vendor in possession to account for rents and profits is thus in part discussed:

"The right to or accountability for rents and profits is frequently treated as correlative with or dependent upon the liability for or payment of interest on purchase money, the one being ordinarily treated as equivalent to the other, and the cases proceeding upon the principle that, unless there is some agreement or equitable consideration to the contrary, one party should not have both the property and the purchase money or the proceeds thereof without accountability for either. In equity from the time that the contract should be completed the vendor is ordinarily regarded as entitled to the purchase money or interest thereon and the purchaser to the property or its rents and profits; and therefore the vendor, if he has the use of the property and receives interest, should account for the rents and profits, and the purchaser, if he receives or requires the vendor to account for the rents and profits, should pay interest on the purchase money."

The modification of the judgment by the Appellate Division would seem to have been futile unless the court had then been of the opinion that, as far as the facts have been disclosed, there was an equitable right in Bryant either to be relieved from the interest or to be allowed the rents and profits which had accrued to Turner from the possession of the property as an offset thereto. The authorities recognize that the circumstances attending the fulfillment of the contract

may be so variant that the equitable rights of the parties must always depend upon the peculiar circumstances attending each case.

Applying these principles to the case at bar, Bryant should not be compelled to pay interest upon the $2,800, while Turner had the use and occupation of the mill and before it was burned. Nor should Turner be required to pay for the use and occupation of the mill, while Turner is relieved from the payment of interest upon his purchase price. A proper adjustment of the accounts between the parties would be to charge Bryant with the $2,822 specified in our former decree, and also with costs as taxed amounting to $587.38; and, further, with the premiums paid upon the $4,000 insurance policy by Turner, for which Turner should have credit under the contract itself. These premiums should bear interest from the time that they were paid to the time of the fire. As against these sums, Bryant should be credited with the insurance received amounting to $4,000. This would leave some balance owing by Bryant to Turner upon the payment of which Turner should convey to Bryant the property in question.

If it be necessary to find authority for this determination by this court, outside of the general power of the court as heretofore exercised, such authority may, we think, be found in section 1317, Code of Civil Procedure, as amended by chapter 380, Laws of 1912.

The judgment heretofore specified may be deemed amended so far as be necessary to conform hereto. Judgment appealed from should be thus modified, and, as modified, affirmed, without costs to either party. The form of the judgment to be settled before SMITH, P. J.

Judgment modified as per opinion, and, as modified, unanimously affirmed without costs to either party. Form of judgment to be settled by SMITH, P. J. All concur.