ALLEN, J., dissenting; CLARK, C. J., concurring in dissent.
The facts are sufficiently stated in the opinion of the Court by MR. JUSTICE WALKER.
This case was before us at Fall Term, 1911, and is reported in157 N.C. 470. The facts are therein fully stated. By judgment of the Superior Court of Tyrrell County at Spring Term, 1911, Judge O. H. Allen
presiding, the plaintiff was required to file with the clerk of the court a proper release of the $5,000 debt and mortgage, "discharging the defendant, E. B. Hopkins, and his real estate from liability for the said $5,000," and further, "to deposit with the clerk the sum of $1,000 for the use of E. B. Hopkins," the clerk being required to deliver the release and pay the money so deposited with him to defendant Hopkins, and to deliver Hopkins' deed, which was required to be duly executed by the latter and deposited with him, to the plaintiff.
The only modification of the judgment by this Court consisted in a clause giving reasonable time for a compliance with the judgment and requiring strict performance by the plaintiff of his part of the contract, and denying him a sale of the land. It was not intended, and it clearly appears not to have been intended, to change the former judgment in any other substantial respect. It is nothing but fair and just, and is something demanded by an equitable consideration of the rights of the parties, that the plaintiff should release and discharge the defendant from any and all liability for the debt of $5,000, and, besides, this is "nominated in the bond." When this is done, and the clerk has received the release and the $1,000 and the defendant has executed and delivered to the clerk for the use of the plaintiff his deed for the land in dispute, the clerk will then deliver the papers and pay the money as directed by the judgment.
The judgment of the Superior Court, as last rendered, does not, in form or substance, contain those provisions, one of which was that the plaintiff should release the defendant from the liability on the mortgage debt, and his land from its lien, and the other that he should pay him, in addition, $1,000. He had been directed by Judge Allen to do these things, and, without changing that part of the judgment, we also distinctly required him to "pay the money ($1,000) into court, and otherwise comply with his part of the contract within a reasonable (62) time." It is perfectly plain, therefore, that he must do all that is necessary to release the defendant from the indebtedness and the mortgage securing it, and also pay the $1,000; but the last judgment of the Superior Court only requires him to pay $6,000, which may not be sufficient for the purpose, as interest had accrued on the debt. It is recited in this judgment that the former judgment only required the payment of $6,000 by the plaintiff, but this is clearly an oversight, as we have shown. The plaintiff was required to have the debt and the lien of the mortgage released, and this he must do. *Page 52 
In the complaint (section 11) it is alleged that plaintiff had arranged with the holder of the mortgage debt to relieve defendant's property from the lien of the same, but this is denied in the answer, and there is no finding in the verdict with respect to it. It is stated, in an affidavit filed at this term by the defendant, that the mortgage debt was payable by installments, the last of which will mature January 1, 1916, and interest will continue to accrue; but we can take no notice of this allegation, as there is no such fact stated in the record, and the judgment cannot be attacked collaterally or amended or modified in the way suggested. But it may not be a practical question, as the former judgment, as we interpret it, requires the plaintiff to cancel the debt and mortgage and relieve the defendant from all liability therefor. If it appeared that plaintiff had obtained a sufficient release and made a tender of it and the mortgage notes to the defendant, or had caused the mortgage to be canceled on the record and tendered the notes to the defendant, who rejected the tender, the question of defendant's liability to account for rents after the tender might have arisen, but no such question is presented in the record.
It is suggested that defendant should account for rents and profits of the land received by him since the appeal was taken, as he has thus delayed a final settlement of the matter. If by this is meant that he should account for them from the date of the first appeal, the answer is that the defendant was simply exercising a legal right when he prosecuted an appeal to this Court to test the validity of the court's (63) rulings, and there is no rule of the law, or special rule of this Court, as there is in some appellate courts, under which he can be penalized for so doing, even if the appeal was merely for delay. The first appeal was by no means a frivolous one, as serious questions were presented for our consideration, and the solution of them was not free from difficulty. As to the second appeal, we have decided with the defendant, and certainly he should lose nothing because he succeeded in it. But the more conclusive answer is that the plaintiff did not comply with the conditions of the contract, that he should release the land from the mortgage debt, before this suit was brought, nor has he since complied therewith. The judgment, signed by Judge Allen, required him to release the mortgage debt — plainly so — and we affirmed that judgment and specially directed that he must "pay the money due (which was $1,000) into court" and "otherwise comply with his part of the contract" — that is, release the mortgage debt, for there was nothing else to do. If and when he performed his part of the duty, the defendant was required to execute and deposit the deed, and upon his doing so, he was to receive the money from the clerk and surrender the possession of the land. The plaintiff was not entitled to the possession of the land, and *Page 53 
consequently not to the rents and profits, until he had complied fully with the judgment of the court, and surely the defendant cannot be made to pay damages, in the way of rents and profits, for a delay caused by plaintiff's own failure to obey the order of the court. It is well to add that, while we have deemed it proper, under the circumstances, to discuss the question as to the rents, it is not presented in the case by any exception or otherwise. The plaintiff did not appeal, and we are not at liberty to decide matters not before us.
But it is suggested that defendant agreed to sell land to plaintiff for $1,000, and to release the mortgage only "to the extent of $5,000 on thatand other lands." If by this is meant that the plaintiff was required to pay only $6,000, that is, the $1,000 in cash and $5,000 towards liquidating the mortgage debt, it is not by any means sustained by the admitted facts, nor is it true that plaintiff "has, at all times, been ready, willing, and able to perform the contract on his part, and that defendant refused to perform his part." The plaintiff (64) alleged that he was ready to perform his part of the contract, in his complaint, but this is squarely denied in the answer. (Record, p. 5, and 7th section of the complaint, and p. 7, and sections 7 and 8 of the answer.) This allegation and denial made up an issue, and there is not a shred of evidence in the case to show that plaintiff ever offered to comply with his contract, by tendering the release, as expressly stipulated in the contract and as required by the first judgment, which was affirmed by us. This feature of the case was not overlooked in the former opinion, but distinctly observed and considered. It is also now alleged that defendant not only refused to perform the contract, but denied its execution. True, he denied it, as he had the legal right to do, and the jury, upon evidence clearly preponderating in favor of defendant, as it seems, found against him, and we are not permitted to review their verdict. But all this prolonged controversy, so much emphasized as chargeable against the defendant, was merged in the judgment of Judge Allen, which required — and we quote the language again — not that the plaintiff should pay $6,000 into the court, but that "he should deliver to said clerk proper paper-writings releasing thereal estate of the defendants from its mortgage indebtedness to the extent of $5,000, and discharge the defendant Hopkins and his real estate from liability for said $5,000, and also deposit with the clerk the $1,000 (cash payment) for use of defendant Hopkins," and when this is done, "the clerk shall deliver the deed of Hopkins to the plaintiff Bateman." And what is next: And he shall also "deliver said release of indebtedness and said $1,000 to defendant Hopkins." Plaintiff has never tenderedany kind of release, and this is the gist of the matter. How could such *Page 54 
a judgment mean that plaintiff should pay $6,000 into court, unless that amount was accepted by the mortgage as a payment of his entire claim, and he should thereupon execute and deliver to the defendant, or to the clerk of the court, his release of the debt and mortgage? Is not the expression, "to the extent of $5,000," merely descriptive of the principal of the debt and of the amount secured by the mortgage? This is made too plain for discussion by what follows, to wit, "and discharging the defendant (65) Hopkins and his real estate from liability for said $5,000." It is perfectly manifest that the money to be deposited with the clerk was the $1,000, the cash payment, and the other requirement was that plaintiff should have the mortgage released. But all this is made absolutely clear by the plaintiff's own allegation in his complaint. The allusion to the $5,000 is to the principal of the debt, which, of course, in law, carries interest, as will appear from the following extract taken from the complaint:
"SECTION 4. By the terms of said contract plaintiff was to assume the payment of certain notes outstanding, which had been executed by said defendant, being secured by a deed of trust or mortgage deed executed by E. B. Hopkins and wife, Lula M. Hopkins, to C. W. Tatem and Ella G. Tatem, dated 12 March, 1906, and recorded in the office of the Register of Deeds of Tyrrell County, North Carolina, in Deed Book 53, page 425; said notes aggregating the sum of $5,000, said mortgage securing the same, conveying several certain other parcels of land than that parcel described in section 1, and said plaintiff was to pay said defendant $1,000 in cash, in addition, in consideration of (plaintiff) assuming the payment of saidnotes (which, of course, includes interest) and canceling and relievingsaid mortgage liens upon said defendant's property."
It would seem to be sufficient to say that Judge Allen's judgment required, in express and positive terms, that plaintiff should file a release of the encumbrance as a condition precedent to his right to have the deed, and we affirmed that judgment, and not only did we affirm it, but ourselves expressly required plaintiff to do so, in unmistakable language; and that was a unanimous decision. The money required to be paid into court was the $1,000, and not the $5,000, for that would not "release or discharge the mortgage," being only the principal of the debt. Who could reasonably suppose that a creditor would receive less than his claim? and unless he did so, how could the debt and mortgage be "released and discharged"? It was further at the option of the creditor to release, and defendant was not required by the contract to take this chance, but the plaintiff. We have held that the judgment (66) directing plaintiff to pay into court $6,000 was erroneous, because *Page 55 
it was a clear departure from Judge Allen's judgment, affirmed by this Court. To decide otherwise would be to make the defendant give up his home, not only upon questionable evidence, but directly contrary to the written words and spirit of the contract.
To put the case succinctly, plaintiff is simply required to perform the contract as it is written, and not as it has been reformed by the last judgment. The whole argument to the contrary is based entirely upon a mistaken assumption of fact, not at all sustained by any of the evidence.
It is first assumed that plaintiff will be required to pay interest, when that is what he promised to do, as the creditor is entitled to receive it, and cannot be forced to release his mortgage until he does. The defendant has never received any money, or had the use of any, and the plaintiff is not entitled to the deed and possession of the land until he tenders, not money, but the release called for in the contract. If he persists in refusing to make the proper tender, he must take upon himself the penalty, that is, he must pay, not to defendant, but to the mortgage creditor, the interest accrued by reason of his plain default.
The defendant has not broken the contract, but merely insists, as he has a right to do, on its performance. It is the plaintiff who seeks to benefit by its breach. The facts are all that way in the record, and cannot be changed by construction or argument. The defendant never agreed to sell the land for $6,000, but for $1,000 and a release of the mortgage, and whatever it takes to procure this is the measure of plaintiff's liability. He must deal with the mortgage creditor and get the release, and not with defendant. The plaintiff is in the wrong and seeks to take advantage of it, and, we think, most inequitably. We have already gone to the very verge of the law, and the facts, to enforce the contract in plaintiff's favor, and we should not advance a step beyond.
It is of no use to argue that, generally, in foreclosure and redemption suits, rents and profits should offset interest. That is not this case, and bears no resemblance to it. The defendant has not delayed the execution of the agreement, and could not be put in default until (67) plaintiff had performed his part of the same by paying the $1,000,and tendering a good and sufficient release. If interest accumulated on the principal of $5,000, it was, as we have said, his fault. The contract, the judgment of Judge Allen and the judgment of this Court, explicitly told him what his obligation was, and he has failed, so far as the case discloses, even by any attempt, to comply with it. He cannot escape by pleading an erroneous judgment rendered below upon our certificate.
It is strange to contend that the interest has accumulated by defendant's default, even in the best view for plaintiff, as defendant, by his appeals, was merely pursuing the courses which the law allowed to him *Page 56 
in the vindication of his rights. This is the first time it has been suggested, we think, that a litigant must be penalized for appealing to this Court to review and correct alleged errors below, especially when we have modified one judgment and reversed the other.
The increase of the sum to be paid, by adding the interest, is no change of the amount of the debt, which was $5,000, the interest being only an incident and given to the creditor by his contract and by the law. This not infrequently happens in every appeal, and is one of the necessary results or concomitants of litigation. But the conclusive answer to all these suggestions is, that no such point is raised in the record, the defendant having appealed and not the plaintiff, and the latter nowhere, in the whole course of the litigation, has ever, in a legal sense, claimed the right, now for the first time urged in his behalf, that the defendant should account for the rents.
The plaintiff's claim that rents should be paid by defendant is based entirely upon a misconception of the relations of the parties. It is said the defendant denied the contract, and the jury found against him, and this constitutes a breach. Not at all; and this false premise or assumption has led the plaintiff into the error of supposing that defendant is in the wrong. The plaintiff is required to do more than merely show a contract; he must also show performance on his part, as he seeks to enforce it, or, at least, a tender of performance, before he can put (68) defendant in the wrong; and this he has not done. The jury said that he was ready and able to pay off the mortgage indebtedness, but he had not tendered performance as to either. His readiness to perform is not what the law or the first decree required of him, but the actual payment of $1,000, and the actual tender of the release. The rights and duties of the parties were ascertained and declared in the first decree, and that distinctly required the payment of $1,000 and the tender of the release, and, moreover, was affirmed by us. So it will not do to argue that defendant is in the wrong and, therefore, should pay the rents, because the tender of the release by plaintiff was a condition precedent to the execution of the deed and the surrender of possession by defendant. It is sufficient to say, in answer to plaintiff's contention, that plaintiff himself is in the wrong, because he has never complied with the decree of the Court, and defendant cannot be in the wrong so long as plaintiff fails to do so.
It is not a case of having "both money and land," for the promise of plaintiff (vendee) was not to pay money alone, but to pay money ($1,000) and to file a release, the latter of which he has not done, nor does he pretend to have done it. The stipulation is joint and entire, and the whole must be performed before the time comes for defendant to give up the deed and the land. *Page 57 
Again, defendant has had no use of the money, actually or constructively. Plaintiff paid $5,000 into court, and he now asserts that it is the same as depositing a release, which it clearly is not, and both JudgeO. H. Allen and this Court have said so, and for the reason that it is not so stated in the bond. The money would not buy the release, as the debt and mortgage will not mature for some years, and interest has accrued and will accumulate, and therefore it is that the vendor (defendant) contracted specifically for a release, and not for the money. So that it cannot possibly be gainsaid that plaintiff has been in default from the beginning, and certainly since the first judgment of the lower court, by which he is bound and concluded, not having appealed therefrom, he not having complied with its essential and chief mandate, that he should file a release of the debt and mortgage, which are (69) liens on the other lands of defendant. An apt statement of the law will be found in Bostwick v. Brock, 103 N.Y. 423:
"The purchaser is entitled to the rents and profits from the time when, according to the terms of the contract, possession should have been delivered, or, if the vendor has remained in possession, he is chargeable with the value of the use and occupation for the same period, and the purchase is chargeable with interest on the purchase money, if it remained in his hands unappropriated." But this presupposes that the purchaser was not only able, ready, and willing to perform, but had actually tendered performance, for of course he would not be entitled to possession, or the duty of defendant to deliver up the possession to him would not have arisen until plaintiff performed his full part of the contract and thereby put the vendor in default.
In this case, as matter of law, the plaintiff has not been ready, able, and willing to perform, as it is admitted that he has never obtained the mortgagee's release to this day. The principle of equity, "that specific performance is a matter, not of absolute right, but of sound discretion," has no application here, for the purpose of showing that this plaintiff was not entitled to it, if defendant had not broken his contract. The first decree merely required the parties respectively to perform the contract, each his part of it, plaintiff's part being to pay the $1,000 and to exonerate the defendant's land from the mortgage lien by having the same released, and his failure to obey the order of the court is what puts him, and not defendant, in default. His right to specific performance was fully explained in the first opinion, and requires no further comment from us. Plaintiff, in his present contention, advanced for the first time, without any exception to present it, loses sight of the fundamental fact in the case, that he has never tendered the release, and, in fact, has never been ready to do so, as it is not in his possession or *Page 58 
under his control, and never has been, and he can take nothing from the last and erroneous decree of the court, because it is founded upon the same misconception.
Let the case proceed hereafter in accordance with the opinion of this Court affirming the judgment rendered by Judge Allen. As their (70) rights have now been finally determined, the parties may be able to adjust their difficulties without further litigation, as plaintiff's counsel intimated in the argument that the necessary release could be easily secured by him.
The defendant's motion to dismiss, as plaintiff had not complied with the former judgment, is denied. He did what the last judgment required him to do, and should not be held to have forfeited his right to a specific performance, as already decreed, because that judgment was erroneous, nor can he profit by it in any way to the prejudice of the defendant.
Error.