(December 4, 1922.)

## NATALIE V. BERDING, Respondent, v. NORTHWESTERN SECURITIES COMPANY, a Corporation, and J. W. SLICK and W. B. SLICK, Appellants.

[211 Pac. 62.]

PLEADING AND PRACTICE—NECESSITY FOR FINDINGS—VENDOR AND PURCHASER — FORFEITURE — TENDER — OFFER TO DO EQUITY — STRICT FORECLOSURE.

1. The court must make findings upon all the material issues raised by the pleadings. It is not error to fail to make findings upon immaterial issues.

2. Where a contract between vendor and purchaser provides that time is of the essence of the contract and that upon failure to make any payment the contract shall become immediately null and void, and all payments made shall be retained as stipulated damages, where the purchaser has failed to make payment at the time required by the contract but thereafter the vendor accepts other payments under the contract, the vendor cannot thereafter declare a forfeiture for such failure without giving notice to the purchaser of the intention so to do, and also giving a reasonable time within which to make such payment.

3. In an action by a purchaser to enforce the provisions of a contract for the purchase of real estate, the failure of the court

---

Publisher's Note.

Payment or tender of purchase price as condition precedent to right of purchaser to specific performance, see notes in 4 Ann. Cas. 852; Ann. Cas. 1913C, 647.

to find as a fact whether or not the vendor had given notice that the contract was forfeited, which fact is material in order to determine whether or not a tender upon the maturity of the contract is excused, does not require a reversal of the case in the absence of an offer by the purchaser in his pleadings to pay the full amount due.

4. Sixty days was a reasonable time within which to require payment in a decree of strict foreclosure under the circumstances disclosed in the case at bar.

5. The judgment of the trial court as to the amount due on a contract of purchase and sale will not be disturbed where there is conflicting testimony, and it does not clearly appear that the court committed error in finding the amount due.

APPEAL from the District Court of the Seventh Judicial District, for Payette County. Hon. B. S. Varian, Judge.

Action to quiet title and forfeiture. Judgment for plaintiff. *Affirmed.*

Hawley & Hawley, for Appellant Northwestern Securities Co.

W. C. Bicknell, for Appellants Slick Brothers.

Where a trial court fails to make specific findings upon material issues made by the pleadings and in support of which evidence was introduced, the decree must be set aside. (*Carson v. Thews,* 2 Ida. 176, 9 Pac. 605; *Standley v. Flint,* 10 Ida. 629, 79 Pac. 815; *Berlin Machine Co. v. Dehlbom,* 29 Ida. 494, 160 Pac. 746; *American Mining Co., Ltd., v. Trask,* 28 Ida. 642, 156 Pac. 1136; *Jensen v. Bumgarner,* 25 Ida. 355, 137 Pac. 529; *Lorenzi v. Star Market Co.,* 19 Ida. 674, 115 Pac. 490, 35 L. R. A., N. S., 1142; *Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Sterrett v. Sweeney,* 15 Ida. 416, 98 Pac. 416, 20 L. R. A., N. S., 936; *Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Olympia Mining Co. v. Kerns,* 13 Ida. 514, 91 Pac. 92; *Uhrlaub v. McMahon,* 15 Ida. 346, 97 Pac. 784.)

A vendor under an instalment contract cannot accept payments on instalments and then declare a forfeiture for

36 Idaho.—25

failure to pay such instalments on time. (39 Cyc., "Vendor and Purchaser," pp. 1610, 1611, and cases cited; *Maffett v. Oregon & C. R. Co.,* 46 Or. 443, 80 Pac. 489; *Van Dyke v. Cole,* 81 Vt. 379, 70 Atl. 593; *Boone v. Templeman,* 158 Cal. 290, 139 Am. St. 126, 110 Pac. 947; 29 Am. & Eng. Ency. 685, and cases cited.)

Isham N. Smith and R. E. Haynes, for Respondent.

A general negative finding is sufficient to sustain a decree of dismissal or a decree disallowing an equity. (38 Cyc. 1976.)

No findings are required on admitted facts. (38 Cyc. 1973.)

While parties to a contract may so act that tender of performance will be excused as between them, yet when litigation arises involving a contract which makes time an essential ingredient, and they are before a court of equity, a party must make an offer to do equity as a basis for relief from the court. (Pomeroy on Specific Performance, 2d ed., sec. 362; *Prairie Dev. Co. v. Leiberg,* 15 Ida. 379, 98 Pac. 610; *Kelsey v. Crowther,* 162 U. S. 404, 16 Sup. Ct. 808, 40 L. ed. 1017; *Smith v. Krall,* 9 Ida. 535, 75 Pac. 263; 38 Cyc. 169.)

A judgment will not be reversed for error which does not affect the substantial rights of the parties. (*Smith v. Ellis,* 7 Ida. 196, 61 Pac. 695.)

"There is no necessity for findings upon immaterial issues, nor upon facts alleged in the complaint and admitted by the answer." (*Fouch v. Bates,* 18 Ida. 374, 110 Pac. 265.)

Findings of fact should be liberally construed in support of a judgment. (*Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Fehr v. Haworth,* 33 Ida. 96, 190 Pac. 248.)

RICE, C. J.—On the 20th day of December, 1914, respondent Natalie V. Berding entered into a written contract with J. W. Slick and W. B. Slick, who will be hereinafter

referred to as the Slick Brothers, for the sale of certain real estate and personal property then situated in Canyon county, now in Payette county. The real estate was encumbered by a mortgage of $8,000, the payment of which the Slick Brothers assumed in consideration of the right granted to them to dispose of so much of the personal property as they desired, on such terms as they might consider to their advantage. Slick Brothers were put into possession of the real estate, in consideration of which they agreed to pay the sum of $1,800 for each of the years 1915, 1916, 1917, 1918 and 1919, and also the taxes assessed against the property during such years. They further agreed to keep the buildings and contents insured for the benefit of respondent. It was further agreed that respondent would place in escrow a good and sufficient warranty deed, conveying the premises direct to Slick Brothers upon the payment of the total sum of $40,000 on or before the 1st day of January, 1920. By this contract, however, the Slick Brothers did not agree to purchase the real estate, nor to pay the purchase price. During the year 1916, the $8,000 mortgage referred to, running to the Union Central Life Insurance Company, was canceled and a new mortgage upon the premises was executed by respondent and Slick Brothers for $15,000. Slick Brothers received the benefit of the $7,000 increase, and assumed payment of the new mortgage.

On the 23d day of July, 1919, respondent entered into an agreement in writing with appellant Northwestern Securities Company, a corporation, hereinafter referred to as the company, which contained the following provision: "That for and in consideration of the sum of $29,000 . . . . the party of the first part [respondent] does hereby give, grant, bargain, sell and convey unto the party of the second part, all her right, title and interest, including her vendor's lien, in and to certain tracts of land." (Describing the premises the same as described in the contract with Slick Brothers.) By this agreement respondent also sold and assigned all her right, title and interest in and to the contract of sale, so

called, between herself and the Slick Brothers, together with the property described therein, real, personal and mixed. By the terms of this agreement, appellant company agreed to buy the property, and respondent's interest in the Slick Brothers' contract, for the purchase price mentioned. The agreement recited the existence of the $15,000 mortgage on the premises, and by its terms the company bound itself to pay the same, together with interest thereon, and to save and hold respondent harmless from any and all liability under the note and mortgage and for any costs and disbursements which might legally be assessed thereon. The company further covenanted and agreed to pay all taxes and assessments upon the property as the same might become due upon the lands described in the agreement, so long as any deferred payments were unpaid. It was agreed between the company and respondent that the purchase price should be paid in the following manner: $6,000 within ten days after the execution of the agreement, and $23,000 on the 1st day of January, 1920. It was further provided in the contract that if the company should default in its payments or any of the covenants agreed by it to be kept and performed, "then and in that event this contract and agreement between the respective parties hereto and all assignments, deeds and transfers of every kind and character made by the party of the first part [respondent] to the party of the second part or its order, shall become null and void and without force and effect and all payments made by the party of the second part to the party of the first part under the terms of this agreement shall be retained by the party of the first part as stipulated damages arising out of the default of the party of the second part and out of the breach of this, its contract, with the party of the first part. . . . . It is understood and agreed between the respective parties hereto that time is of the essence of this contract and agreement." In addition to the contract with the company, and at about the same time, respondent executed a warranty deed conveying to the company the identical land described in her said contract, which deed,

the court found, was left with the company in escrow with the understanding that it should not be recorded until final payment in the sum of $29,000 had been made thereon by the company, and then to be contingent on and subject to all rights of Slick Brothers in the premises; that the deed was recorded with the recorder of Payette county on August 8, 1919, by George W. Estes, treasurer of the company, without right or authority at a time when the company had not carried out the terms of its contract with respondent. It will be unnecessary to set out other terms and conditions of the contracts involved.

Respondent brought this action against the company and Slick Brothers for the purpose of quieting her title to the property against all claims and demands of the company, claiming that its rights had been forfeited, and of having the court determine the amount remaining due to her from Slick Brothers and requiring them to pay the same within a reasonable time or forfeit their interest in the property. By its decree, the court adjudged the contract between respondent and appellant company to be null and void and of no force and effect, and that the same be canceled and purged of record; also that the deed executed by respondent to the company, which had been placed of record, be declared null and void and be canceled and purged of record, and that respondent's title in the premises be quieted as against any claim of the company. The decree further adjudged that the $3,750, paid by the company to respondent, be forfeited to her free and clear of any right or claim of the company. The decree further adjudged the contract between respondent and Slick Brothers to be in full force and effect; that, certain payments having been made by Slick Brothers on the purchase price under the contract, the amount due thereon to respondent was $32,756.61, with interest, and that the same be paid within sixty days from the date of the decree, and that if such payment be not made, title to the premises should be forever quieted in respondent. From this decree, both the

Northwestern Securities Company and Slick Brothers have appealed.

Counsel for the company urge that the trial court failed to find upon material issues raised by the pleadings. In its cross-complaint it had alleged that respondent had represented to the company that there was due, owing and unpaid to her upon the contract by Slick Brothers the full sum of $40,000, and that she had a good right to sell the same; that the cross-complainant, Northwestern Securities Company, relied upon the representations of respondent and believed them to be true and acted upon the belief that there was the full sum of $40,000 due and unpaid upon the Slick Brothers' contract. The cross-complaint contains the further allegation that said representations and facts were not true and were so known to be not true at the time they were made by respondent, of all of which the company became aware on or about the —— day of December, 1919.

The company had access to and full knowledge of the contents of the written contract between respondent and Slick Brothers. It showed upon its face that it was an option contract; that Slick Brothers did not promise or agree to pay any part of the purchase price, and that nothing was due from them unless they elected to pay for the land on or before the 1st day of January, 1920. The agreement between respondent and the company was nothing more than an agreement on her part to sell and convey and on the part of the company to buy the property described in the contract, subject to the right of Slick Brothers to purchase the same for a given sum.

There could be no implied warranty of any amount due respondent under the Slick Brothers' contract, for no amount was due, as the company must have known. Representations alleged in the cross-complaint, as to the amount due from Slick Brothers, were material only on the theory that such representations were fraudulent. The company elected to stand upon the contract, and sought to enforce its provisions. It was limited, therefore, to the recovery of damages, if any, suffered on account of the alleged fraud.

A careful examination of the company's cross-complaint fails to disclose any allegation of damages occasioned by fraudulent representations.

On the contrary, the company contends in this court, and drew its pleadings in harmony with such contention, that it is entitled to have the purchase price which it agreed to pay reduced by an amount equal to that which had been paid by Slick Brothers upon the purchase price under their contract, upon the theory that there was a partial failure of consideration. The company cites a number of cases in support of its contention. Many of them are to the general purport that in actions for specific performance, where one cannot convey or perform to the full extent of his agreement, specific performance may be partially enforced with a corresponding abatement of the consideration.

The case of *Hexter v. Bast,* 125 Pa. St. 52, 11 Am. St. 814, 17 Atl. 252, is cited, and the following quotation called to the attention of the court: "Where the assignor of a mortgage gives a certificate that he has not received any payment upon the notes described in the mortgage, with certain exceptions, which certificate proves false, the assignee has a right of action in deceit, although on the transfer of the mortgage it was stated that no recourse should be had to the assignor."

On the other hand, it is stated in 5 C. J. 968, that in the absence of express warranty the assignor of a chose in action for a valuable consideration impliedly warrants to the assignee that the chose was a valid subsisting obligation in his favor against the debtor to the extent to which he purports it to be such.

The case of *Trustees, etc., v. Siers,* 68 W. Va. 125, Ann. Cas. 1912A, 920, 69 S. E. 468, is cited, in which it is said: "In every transfer of a chose in action by delivery or indorsement, without recourse, there is an implied warranty of a sufficient and valid consideration. The assignor warrants that the bill, note or bond is genuine, and that the amount of money it calls for was owing and unpaid at the

time of the assignment, in the absence of an express agreement to the contrary.'' (Citing many cases.)

The principle contended for is not applicable to this case, because, as we have seen, the company was not an assignee of a chose in action against the Slick Brothers. It is not alleged or proven that any damages occurred as a result of the alleged misrepresentations. For these reasons no findings were required as to the allegation that Mrs. Berding misrepresented the amount due from Slick Brothers.

With reference to the matter of the forfeiture by the company of its rights under its contract with respondent, the court found that of the $6,000 which the company agreed to pay her within ten days after the execution of the contract, it made several payments aggregating $3,100, the last of these payments being made August 25, 1919. The court further found that on the last-mentioned date, George W. Estes, treasurer of the company, paid to respondent $100, and tendered to her a receipt for legal and other services in the sum of $2,900, and obtained from her a receipt for $3,000 running to the Northwestern Securities Company to apply on the contract of sale. The court further found that respondent declined to accept Estes' receipt for $2,900, but did sign the receipt for $3,000 to the company and delivered it to Estes. George W. Estes referred to in the findings, had been attorney for respondent and was employed by her to find a purchaser for the Slick Brothers' contract. He also was one of the organizers of the company, which came into existence on the 23d day of July, 1919, the same day upon which the contract was drawn. He became a director and officer of the corporation. The record shows that the corporation instructed him, as treasurer, to pay $6,000 to respondent. He represented the company in making the payments to respondent. He had no right to deduct the amount due him personally for his services. His claim for services was not an offset of the amount due respondent from the company. It is clear from the record, and uncontradicted, that of the $6,000 due respondent within ten days after the

execution of the contract, only $3,100 was paid by the company. It is true she executed her receipts to the company for the full sum of $6,000, but receipts when not contractual in their nature are subject to explanation. There is no showing that respondent entered into any agreement with Estes, as treasurer of the company, or of any other facts sufficient to estop her from showing the true facts. However, she did not treat the contract as forfeited on account of the foregoing default, but continued to accept payments thereunder as late as December, 1919. In order to have forfeited the contract on account of this default, it would have been necessary for her to have given notice to the company of her intention so to do and to have given it a reasonable time to make the defaulted payment. (*Sullivan v. Burcaw,* 35 Ida. 755, 208 Pac. 841.)

It is conceded that the company did not tender the amount due on the 1st day of January, 1920, to respondent. The company seeks to excuse its failure to make such tender, and sets out three reasons, any of which it claims is sufficient for that purpose:

First: That respondent Berding during the year 1919, notified Slick Brothers that the contract with the Northwestern Securities Company was at an end, and that she had forfeited all payments made by it and that the Slick Brothers should not pay to it any sums due.

Second: That on December 21, 1919, respondent Berding notified appellant Securities Company that the contract was at an end, and that she had forfeited all sums paid and that she would no longer recognize the contract.

Third: That respondent refused to inform appellant Securities Company as to the amount Slick Brothers had paid on their contract, and that it could not pay or tender the balance due her.

We do not think the first ground stated is sufficient to excuse a tender. Her notice to Slick Brothers was not notice to the company, nor does it demonstrate that a tender by the company would have been a useless and vain thing.

As to the third ground, the foregoing discussion shows that it is without merit.

As to the second ground set out, there is a conflict in the evidence. The finding of the court on this point is in the following language: "That about December 21, 1919, a meeting was had in the apartment of Mrs. Berding in the Eaton Hotel in Portland, there being present George Estes, Treasurer, and J. V. Mitchell, Vice-President, of the Northwestern Securities Company, Mrs. Berding and J. W. Slick, which was stormy in its character and in which the defendant J. W. Slick gave vent to his feelings toward the two gentlemen first named and claimed that he had overpaid Mrs. Berding in the sum of $10,000. It is claimed that through J. W. Slick at that meeting, Mrs. Berding declared the contract with the Northwestern Securities Company forfeited thus relieving it from making a tender of the $23,000 due on its contract January 1, 1920. Slick denies, as does Mrs. Berding, that he told Estes and Mitchell that the contract of July 23, 1919, was forfeited. Mrs. Berding further says she did not authorize Slick to make such a statement. I am of the opinion therefore that no declaration of forfeiture binding upon Mrs. Berding was made at that meeting."

The foregoing cannot be construed to be a finding of fact. Although findings of a court should be liberally construed to support the judgment (*Donaldson v. Donaldson,* 31 Ida. 180, 170 Pac. 94; *Fouch v. Bates,* 18 Ida. 374, 110 Pac. 265), the most that can be said is that the purported finding is a conclusion of law. We are of the opinion, however, that the company is not prejudiced by the failure of the court to find on this issue, and is not in a position to claim that the judgment should be reversed on that account.

This action was commenced on March 19, 1920, some two and a half months after all payments under the contract were due. The cross-complaint, wherein it seeks specific performance, contains the following: "That this cross-complainant has done and performed all the things by it under

said agreement Exhibit 'B' to be done and performed, save and except when prevented from doing so by the said cross-defendants, Natalie V. Berding, J. W. Slick and W. B. Slick. Cross-complainant hereby tenders into this court the sum of Twenty-three Thousand Dollars ($23,000.00) and all other sums that this court may determine to be due from it to cross-defendants under and by virtue of said contract, Exhibit 'B,' the said sums to be paid to cross-defendants as their interests may appear upon the release of the mortgage upon said property, lien for $15,000.00 held by the Union Central Life Insurance Company of Cincinnati.''

This tender is conditioned upon the release of the mortgage which the company had assumed and agreed to pay. It had, moreover, made careful provision in its contract to the effect that if it should be obliged to pay this mortgage it would be subrogated to all the rights of respondent against Slick Brothers growing out of their previous assumption of the mortgage. The tender is not sufficient. The company must offer to do equity. Under the facts and circumstances shown in this case, the least that could be required of the company would be that it show that on the 1st day of January, 1920, the date when the performance of its contract was due, it was ready, able and willing to perform and that in its cross-complaint it offer unconditionally to perform. The court made no finding as to the readiness and ability of the company to perform its agreement on January 1, 1920. In its cross-complaint it offered to pay only upon the condition that the $15,000 mortgage which it had assumed should be released. Moreover, as we understand the allegations of the cross-complaint, it has never been willing to pay the full amount due on its contract, but only the amount specified therein less the sum paid by Slick Brothers on the purchase price named in their contract. In our opinion, therefore, the decree of the court annulling the company's contract of July 23, 1919, and the deed of respondent to it and forfeiting the amount paid by it to respondent should be affirmed.

The appeal of the Slick Brothers is predicated wholly upon the claim that the court found that there was a balance unpaid by them upon the purchase price of the premises of $32,754.61, it being claimed that there was due from them the sum of $31,259.36. They also contend that they should be given six months to make payment, instead of sixty days which was given by the court. We are of the opinion that sixty days was a reasonable time in which payment should be made, and also that the evidence is not so clear as to justify this court in concluding that it does not support the finding of the trial court as to the amount due.

·The judgment of the trial court is therefore affirmed, with costs to respondent to be taxed separately against each of the appellants for an amount allowable on each appeal.

Budge, McCarthy, Dunn and Lee, JJ., concur.