237 P.2d 613

STOCKMEN'S SUPPLY CO., Inc. et al. v.
JENNE et al.

No. 7767.

Supreme Court of Idaho.

Nov. 13, 1951.

O. R. Baum and Ruby Y. Brown, Pocatello, for appellants.

R. J. Dygert, Soda Springs, and P. M. Condie, Preston, for respondents.

GIVENS, Chief Justice.

December 28, 1935, Caribou County by written contract, sold to George Carpenter certain described real estate for $1,200, $240 down and $240 on December 28, 1936, 1937, 1938, and 1939, respectively. A total of $641 was paid on this contract by about September, 1939.

December 28, 1938, Carpenter then being indebted to respondent Company, gave them a note for $568.69 due October 29, 1939.

January 29, 1940 Myrtle Jenne, then Carpenter's wife, secured a divorce from him and was awarded his interest in the real property in question. The same day she signed and gave to respondent Company her note for $568.69. This typewritten notation was thereon when admitted in evidence: "Renewal of certain note with interest added" and this notation in red pencil (when and by whom made not clearly disclosed): "Applied to purchase of Carpenter Real Estate."

About July 8, 1940 Mrs. Jenne assigned her interest in the contract, between Caribou County and her former husband, to respondent Company and July 15, same year, Caribou County by warranty deed conveyed the real estate involved to it. On the 8th day of July, same year, the Company agreed in writing to sell the property to Mrs. Jenne for $1,301.20, which was the amount of the note previously signed by her and interest thereon, and the amount paid by the Company to the County, i. e., the balance of the original purchase price from the County of $1,200 plus interest, less what had theretofore been paid the County by Carpenter. Said $1,301.20 was payable $240 December 28, 1940, with like amount annually through 1944, and $101.20 in 1945, with interest at six percent per annum. This is the concluding paragraph of the contract: "Time is the essence of this contract and each payment together with all interest shall be paid as herein stipulated and upon failure of the second party to make such payments the first party may, at its option, declare this contract forfeited and all payments made shall be retained as rental and liquidated damages, *and should the Stockmen's Supply Company, a corporation, serve notice of their intention to exercise their option to declare the contract terminated, they may*

*do so by giving notice to the party of the second part for 10 days and any default may be paid within the 10 days but not afterward."* Dfts. Ex. 4. (Emphasis ours.)

Mrs. Jenne occupied the premises for a time in 1940 and then left and took up her residence at another place in Soda Springs.

Beginning with 1941, respondent Company had charge of and has since rented the premises for the total revenue, at the end of 1949, of $1,984.58. In the interim, respondent Company paid $309 in taxes and improvements, leaving a net income of $1,675.58.

Respondent Company ineffectively undertook to sell the property to one Miner in about 1945 for $3,000, and did sell to the Schvaneveldts February 13, 1950, for $6,-000.

Evidently the validity of respondent Company's title was questioned and it brought suit to quiet title against appellant Mrs. Jenne and her present husband and others who claimed any interest in the property. Respondent Company claims title subject, of course, to the contract with the Schvaneveldts.

Appellants, Mrs. Jenne and her present husband, Calvin A. Jenne, party pro forma, in the amended cross-complaint alleged willingness, ability, and offer to pay as required by the contract, the balance due thereon; respondent Company's refusal to accept such payment; that because the recited purchase price therein was made up of the prior indebtedness of her first husband, and the balance due the County, the contract was in truth and in fact and should be construed, a mortgage; that subsequent to the written contract, appellant Jenne assigned the rents to respondent Company and the Company agreed to collect and apply the rent on the taxes and installments due on the contract, and that such rents exceed the balance due; that in the event they were not sufficient to pay the indebtedness, appellants tendered such balance. Appellants also asked for damages, now of no moment.

Respondent Company's answer to such cross-complaint denied appellants' willingness, readiness, or ability to comply with the written contract or that respondent Company refused to accept moneys under the contracts; that appellant Jenne never paid or offered to pay and that she had abandoned the contract in 1941, and turned over the property to respondent Company; that since that time respondent Company has been in possession of the property and held it adversely to appellants and that their rights are barred by the provisions of Chapter 2, Title 5, Idaho Code. Respondent Company further denied the claimed supplemental agreement by which it was to collect and apply the rents; and denied the contract of sale was in truth and in fact a mortgage, and that rents received exceeded the amount due under the written

contract; and alleged that since 1941 appellant Jenne made no claim to the premises, rents or profits thereof; but admits that appellant Jenne was in possession of the premises for about a year after the written contract was executed and paid some taxes and during that one year, appellant harvested and kept the proceeds of the crop; and asked that appellants take nothing by reason of the cross-complaint and for general relief.

At the conclusion of respondent Company's case in chief, as the result of an extended colloquy between Court and counsel, the names of the Schvaneveldts were endorsed in the proceedings as parties plaintiff with respondent Company, and all of appellants' denials and affirmative allegations were deemed applicable to controvert Schvaneveldts' interests as against appellants'. The Court found: that Mrs. Jenne voluntarily surrendered the property to respondent Company; that the plaintiffs have been in possession of the property and the owners thereof for more than seven years last past and have held possession of the property adversely to appellant Jenne, except as to the right of the Farmers Land and Irrigation Company of Alexander, which evidently has a conceded right-of-way across the land; and " * * * that any interest the said defendant Myrtle Jenne may have had in or to said premises whether by reason of a contract or otherwise is now barred by the provisions of Chapter 2, Title 5 of the Idaho Code." And

concluded respondents were entitled to have respondent Company's title quieted against appellant Jenne's, subject to the contract with the Schvaneveldts and the Farmers Land and Irrigation Company's right-of-way.

Aside from non-payment, the only evidence bearing on abandonment was the testimony of Ruud, manager of respondent Company, as follows:

"A. She said I am moving off of the place and I thought I had better come in and tell you so that you can put somebody down there and watch the property. I said o. k., Mrs. Jenne. To my knowledge that is all that was said.

"Q. Then did she leave there? A. Yes, sir, shortly afterwards.

"Q. Then what did you do? A. We left the place idle for some months before we found a renter to put down there.

"Q. Then any rent you collected would show by your books? A. Yes, sir.

"Q. Then at that time when Mrs. Jenne told you that then you * * *

"Q. When did the Stockmen's Supply Company first take possession of those premises? A. I would say three months after that conversation.

"Q. Then at that time * * * A. The exact date I don't recall.

"Q. Then at that time you put a renter in the house? A. Yes, sir.

"Q. At any time since that time has the defendant, Mrs. Jenne, either been in possession of those premises, or said anything

to you about going into possession of those premises? A. On one occasion.

"Q. When was that? A. Possibly, to the best of my knowledge a couple of years after that. She came to my office—shall I state?

"Q. What was said and done? A. And made the statement to me how much would it cost me to own that place down there. I said Mrs. Jenne, it is out of my hands, the Board of Directors have taken it out of my hands and I don't think the place is for sale to my knowledge; that is all that was ever said."

The written contract did not specify who was to have possession pending payment. Extended cross-examination elicited no further evidence showing abandonment of the written contract, or anything else,

The purported statement from Mrs. Jenne to witness Ruud: "A. She stated to me the fact she would like to buy that place back and how much would it cost me. I said, Mrs. Carpenter, it has been taken out of my hands and I don't believe the place is for sale," did not show abandonment, but evinced desire or inquiry as to further payments and Ruud sent Miner, the then prospective customer relative thereto, to Mrs. Jenne in 1945.

■ Mrs. Jenne denied abandonment of the written contract and in the legal sense, of possession; and, giving Ruud, the only material witness for respondent Company, the benefit of all he said—though his testimony was replete with evasion, forgetful-

ness and contradictions, and statements often completely refuted by the Company's own records—still there is no evidence sufficiently showing abandonment of the written contract to counteract the requirement of notice to forfeit the written contract. Mr. Gorton, the other witness for respondent Company and its secretary, gave no testimony bearing on abandonment of the written contract, except possibly non-payment.

■ The written contract did not require or give Mrs. Jenne possession of the land pending payment as a prerequisite to buy the land, by making the installment payments. Hence, possession by respondents, though with appellants' consent or surrender of possession did not of itself forfeit Mrs. Jenne's rights under the written contract.

■ The fatal defect, in the conclusion of the learned trial Court, stems from the finding as supporting the conclusion that because appellant Jenne asserted no claim to the property or possession thereof since 1942, she had lost her rights under the written contract. No duty rested upon her to assert any claim to keep her rights alive. By the terms of the written contract, if respondent Company wanted by reason of her default in the payments, to end and conclude her right to purchase, it had to give notice, which respondent Company never alleged it did and made no attempt to prove it did, and the record discloses beyond peradventure of a doubt that no such notice was given or forfeiture declared as recited in the written contract. The Court

found only that appellant Jenne had surrendered possession of the property, not that she had abandoned it or the written contract.

Abandonments and forfeitures are abhorrent to the law and all intendments are against them.

The written contract governs and as it required payment by Mrs. Jenne to acquire the land, in equity (and this is an equitable action by respondents) it required action by respondent Company to cut off her right of purchase.

"It will be seen, that the contract provides for a 'written notice from the sellers of the termination of the contract'; and it further provides that the notice shall set forth 'such default'. This requirement was evidently intended to enable the purchaser to forthwith comply with the requirement of the contract or suffer the forfeiture. For that reason, the contract required the notice to set forth the *default* by stating in what the default consisted. In this case the default was specified as the 'failure to pay all delinquent taxes on the sellers' lands * * * for the years 1934, 1936, 1938 and 1939'. Appellants are bound by the terms of their own notice." Marks v. Strohm, 65 Idaho 623 at page 628, 150 P.2d 134, at page 136.

The following cases without deviation support this principle:

" ' * * * The mere failure to pay the purchase money according to the terms of the agreement will not be held a repudiation of the contract so as to authorize a suit by the vendor to have it rescinded.' " Kessler v. Pruitt, 14 Idaho 175 at page 187, 93 P. 965, at page 969.

"Where a contract for sale of real estate makes time of the essence, and provides for a forfeiture of the vendee's rights for failure on his part to make payments at certain times, a continued course of conduct on the part of the vendor in failing to declare a forfeiture, thereby leading the vendee to believe that the vendor waives a strict compliance with the terms of the contract, works a waiver of the vendor's right to declare a forfeiture, unless and until he gives the vendee reasonable notice of his intention to do so, and a reasonable opportunity to make the delinquent payments." Sullivan v. Burcaw, 35 Idaho 755 at page 763, 208 P. 841, at page 843.

It will be noticed the above rule was announced even though the contract did not require notice of forfeiture as herein. Further, to the same effect: " * * * In order to have forfeited the contract on account of this default, it would have been necessary for her to have given notice to the company of her intention so to do and to have given it a reasonable time to make the defaulted payment." Berding v. Northwestern Securities Co., 36 Idaho 384 at page 393, 211 P. 62 at page 64; Seeley v. Security Nat. Bank, 40 Idaho 574, 235 P. 976; Perry v. Reynolds, 63 Idaho 457 at page 464, 122 P.2d 508; Carrington v. Crandall, 65 Idaho 525 at page 532, 147 P.2d 1009; White v.

Ralph, 66 Idaho 38 at page 43, 154 P.2d 167; Wagoner v. Jeffery, 66 Idaho 455 at page 460, 162 P.2d 400; and Stringer v. Swanstrum, 66 Idaho 752 at page 760, 168 P.2d 826.

The reasoning in Butler v. Cortner, 42 Idaho 302 at page 308, 246 P. 314, though on a reverse situation, sustains our conclusions herein. Other cases to like effect are: Grimes v. Steele, 56 Cal.App.2d 786, 133 P. 2d 874 at page 876; Suburban Homes Co. v. North, 50 Mont. 108, 145 P. 2; Thompson v. Lincoln Nat. Life Ins. Co., 110 Mont. 521, 105 P.2d 683 at page 685; Simmons v. Harris, 108 Okl. 189, 235 P. 508 at page 512; Higinbotham v. Frock, 48 Or. 129, 83 P. 536; 120 Am.St.Rep. 796; Kemmerer v. Title & Trust Co., 90 Or. 137, 175 P. 865; Epplett v. Empire Inv. Co., 99 Or. 533, 194 P. 461 and 700; Ewing v. Ryan, 113 Or. 225, 231 P. 981 at page 982; Geroy v. Upper, 182 Or. 535, 187 P.2d 662 at page 665, 173 A.L.R. 1355; Garrett v. Sparks Bros., 61 Wash. 397, 112 P. 501; Shorett v. Knudsen, 74 Wash. 448, 133 P. 1029; Dill v. Zielke, 26 Wash.2d 246, 173 P.2d 977.

■ The statute of limitations did not begin to run until demand for payment and notice of forfeiture upon non-compliance.

Leaf v. Codd, 41 Idaho 547 at page 560–561, 240 P. 593.

Papesh v. Wagnon, 29 Idaho 93 at page 100, 157 P. 775, inferentially clearly supports our analysis and conclusion, because the court recognized, though absent therein, the force and effect of a provision envisaging notice as a condition precedent to forfeiture.

■ There is good authority that the suit is not the equivalent of nor a substitute for notice, Republic Inv. Co. v. Naches Hotel Co., 190 Wash. 176, 67 P.2d 858 at page 860[3], but if it be contended the suit was notice of forfeiture, appellant Jenne had the time engendered by the suit in which to pay and she promptly offered to do so in her cross-complaint and such offer was, under the circumstances, sufficient. Grosgebauer v. Schneider, 177 Wash. 282, 31 P.2d 901; Section 9–1501, I. C.; Harding v. Home Investment etc. Co., 49 Idaho 64 at page 78, 286 P. 920, 297 P. 1101.

■ The Jenne contract was recorded (Ptfs. Ex. A, entry No. 93, sheet 115) and Mr. Schvaneveldt saw the recorded copy of the written contract in the Recorder's office and January 16, 1950, wrote Mrs. Jenne relative to her claim of interest in the property;[1] thus he had actual notice of the con-

1.          "Soda Springs, Idaho
                 "January 16, 1950
"Mrs. Cal Jenne
"Wendell, Idaho
"Dear Mrs. Jenne:
   "I learned today from the Caribou County Recorders Office that you own an

interest in the fourty acres of land which lies west of Soda and north of the highway, which land is being held by Stockmans Supply Co.
   "Do you have a contract which was given you by the Stockmans Supply Co?

tract and the Schvaneveldts have no greater rights than respondent Company and their rights are subordinate to appellant Jenne's. Froman v. Madden, 13 Idaho 138 at page 143, 88 P. 894; Hill v. Federal Land Bank, 59 Idaho 136 at page 141, 80 P.2d 789; Bone v. Dwyer, 89 Cal.App. 535, 265 P. 292 at page 294; Bloech v. Hyland Homes Co., 128 Or. 292, 274 P. 318; Bulmon v. Bailey, 22 Wash.2d 372, 156 P.2d 231 at page 234[6]; Vol. 2 Words and Phrases, 1940, p. 283 and cumulative pages.

The Court did not specifically find that the subsequent agreement as alleged and testified to by Mrs. Jenne was not made; nor did he find that it was. Conceding that no such agreement was made, there is no dispute that after Mrs. Jenne surrendered possession, the vendor remained in possession and collected the rents, issues and profits from the property. The contract provided for interest on the deferred payments. Under these circumstances the correct rule is thus stated and was applied in an exactly similar situation in Turner v. Bryant, 152 App.Div. 601, 137 N.Y.S. 466 at page 469, 7 A.L.R.2d 1213 note, affirmed in 215 N.Y. 669, 109 N.E. 1094:

"* * * It would seem clear that Bryant's rights under the Parmelee contract had been surrendered. Under his contract with Turner, however, he was impliedly, if not expressly, given possession of the sawmill site during the performance of the contract. He afterwards surrendered possession to Turner. He claims that possession was surrendered under an agreement whereby Turner was to allow him 75 cents for each thousand feet of timber sawed. The trial court has found that such an agreement was not made. His rights, therefore, must be determined as though with the right to possession during the continuancy of the contract he had voluntarily rendered possession to his vendor. In such case, his rights would seem to be akin to the rights of a mortgagee to whom a mortgagor had voluntarily surrendered possession of mortgaged premises. In such case the mortgagor would be required to account for rents and profits.

"In 39 Cyc. p. 1630, the liability of a vendor in possession to account for rents and profits is thus in part discussed:

"'The right to or accountability for rents and profits is frequently treated as

If so what are the dates of beginning and ending of your agreement?

"Are you interested in selling your claim or interest in this property?

"I am expecting to be in Wendell, Idaho on or near the 27th day of January, 1950, and would like to make an appointment with you at this time. Would you be so kind as to write to me and tell me what time it would be convenient for a meeting with you?

"I will be glad to pay you for any information you can furnish me regarding this property. Please let me have your reply soon, as I am making plans to be in Wendell near January 27th.

"Sincerely Yours
"s/Dee W. Schvaneveldt
"Box 123
"Soda Springs, Idaho"

correlative with or dependent upon the liability for or payment of interest on purchase money, the one being ordinarily treated as equivalent to the * * * principle that, unless there is some agreement or equitable consideration to the contrary, one party should not have both the property and the purchase money or the proceeds thereof without accountability for either. In equity from the time that the contract should be completed the vendor is ordinarily regarded as entitled to the purchase money or interest thereon and the purchaser to the property or its rents and profits; and therefore the vendor, if he has the use of the property and receives interest, should account for the rents and profits, and the purchaser, if he receives or requires the vendor to account for the rents and profits, should pay interest on the purchase money.' "

This principle is further supported by the following authorities: Rambusch v. Burke, 221 App.Div. 777, 223 N.Y.S. 464; Moore v. Moore, 87 W.Va. 9, 104 S.E. 266 at page 270(3); Bateman v. Hopkins, 160 N.C. 59, 76 S.E. 253 at page 257; Simonds v. Essex Pass. Ry. Co., 57 N.J.Eq. 349, 41 A. 682; Wren v. Cooksey, 147 Ky. 825, 145 S.W. 1116 at page 1120(10); 58 C.J. 1243–4, § 597; 66 C.J. 1006, § 742; 7 A.L.R.2d 1211, 1221.

■ Except as to the Farmers Land and Irrigation Company, the decree is reversed and the cause remanded for the trial court to forthwith determine what, if any, reasonable managerial expense has been incurred by respondent Company in connection with renting the land and if so, the amount; to permit appellant Mrs. Jenne within thirty days thereafter to pay the purchase price; namely, $1,301.20, together with interest thereon as specified in the written contract to the date of such determination, crediting as against such payment of principal and interest, the net rents, issues and profits from the land, i. e., deducting therefrom taxes, costs of any improvements made and managerial expenses. If such net income exceeds the purchase price and interest thereon, respondent Company shall pay such over-plus to appellant Jenne. Thereupon, respondent Company to convey by good and sufficient deed to appellant Mrs. Jenne title clear of any interest or claim of respondent Company or the Schvaneveldts, and decree accordingly.

If appellant Jenne does not so pay and the net income does not suffice, the trial court shall enter a decree quieting title in respondents as against appellants, husband and wife, and their successors in interest. Costs herein to appellants.

PORTER, TAYLOR, THOMAS, and KEETON, JJ., concur.